## Case No. 11,817.

### RIDGWAY v. HAYS et al.

[5 Cranch, C. C. 23.] [1]

Circuit Court, District of Columbia. Nov. Term, 1836.

EQUITY—EQUITABLE RIGHTS—FRENCH SPOLIATION CLAIMS—CONSIGNEE'S COMMISSIONS—COMMISSIONERS' DECISION—INDEMNITY.

1. When a party is obliged to ask the aid of a court of equity to enforce his legal rights, the court will compel him to do equity, and will only grant him relief to the extent of his equitable rights.

2. The consignee, to whose possession the property has not come (it having been seized by a foreign government), has no right in equity to detain the whole sum awarded as indemnity under the French treaty of July 4, 1831 [8 Stat. 430], nor to enjoin, in the treasury of the United States, more than his expenses and commissions.

[Followed in Dutilh v. Coursault, Case No. 4,206.]

3. The commissioners under the French treaty of 1831 had no power to decide ultimately between two or more conflicting American claimants.

[Followed in Dutilh v. Coursault, Case No. 4,206.]

4. If the property seized belonged to a firm, one member of which was not a citizen of the United States, his share of the loss could not be allowed as a claim under that treaty; yet he would be entitled to receive, out of the sum awarded to the other members, what he had paid for freight and for moneys advanced.

5. The decision of the commissioners is conclusive as to the question whether the claim was valid against the French government, under the treaty, but not as to the question whether it was good against the indemnity awarded.

[Followed in Dutilh v. Coursault, Case No. 4,206.]

6. The commissions of the consignee are not chargeable to the French government under the treaty. They are a charge against the indemnity only, as they would have been against the proceeds, if the property had not been seized by the French government and had been sold by the consignee.

---

1 [Reported by Hon. William Cranch, Chief Judge.]

7. The consignees had a right to make reclamations on the government of France, and were justly entitled to reasonable compensation for their trouble and expenses.

8. Where the United States are mere trustees of a fund for the benefit of individuals, it seems that it may be enjoined and stayed in the treasury.

Bill in equity to restrain the defendants, Samuel Hays and others, from receiving, and the secretary of the treasury of the United States and the treasurer from paying to the defendants, the amount awarded to the assignees and representatives of Hays, under the French treaty of spoliations.

The bill states, in substance, that in 1806 and 1807 the plaintiff [Jacob Ridgway] was a merchant in Antwerp, in partnership with Louis J. Mertens, since deceased, under the firm of J. Ridgway, Mertens & Co. That the plaintiff was a native citizen of the United States, then residing in Antwerp, as commercial agent of the United States. That in 1806 or 1807 the American vessels Bordeaux Packet, Helena, and Diamond, with cargoes belonging to American citizens, were consigned to the house of J. Ridgway, Mertens & Co., and arrived safe at Antwerp, and the invoices, bills of lading, and other documents duly came to their hands, as consignees, who accepted the trust, and became vested with all the rights of consignees. Shortly after their arrival the vessels and cargoes were seized and taken possession of by the civil and military authorities of France, then in possession of Antwerp; and after some time, the cargoes were landed and deposited in the public stores, and the consignees precluded from taking possession of them and from exercising any control over, or disposing of them for the benefit of the owners and shippers. That the vessels were subsequently released, but the cargoes were retained by the French authorities, under sequestration until 1810, when they were sold, without any legal proceeding subjecting them to forfeiture or confiscation, under an order of the French emperor, and the proceeds deposited in the caisse d'amortissement, a branch of the French fisc. That the plaintiff, as consignee, incurred great labor and expense in endeavoring to get the property released, and never received any intimation from the owners and shippers that his conduct was ever disapproved by them, &c. That the defendant, Hays, was owner of a valuable part of the Bordeaux Packet, which was insured by several private underwriters, who, or their agents, are made defendants. That the commissioners awarded sundry sums to the several parties interested, and, among others, "to the legal representatives or assigns of the said Samuel Hays," without designating them by name, "the sum of $10,164 98/100," and that the same will be paid to them out of the treasury of the United States unless such payment be stopped and enjoined by this court. That the plaintiff claimed, before the board of commissioners,

and now claims in this court, that he, as consignee, was and is entitled to receive the whole amount of the said indemnity, the property having vested in the consignees by the consignment, subject to account, to the persons interested therein; and exhibited before the board a statement of the amount of his claim against the said fund, for freight, charges, and commissions, exceeding 128,000 francs, applicable to the entire cargo of the Bordeaux Packet, the commissions being calculated upon the amount of sales at Antwerp, in 1810, exclusive of the particular balance of general account against the said Hays properly chargeable against the said shipment. That although the whole of the said claim was not allowed as a distinct and substantive claim against France, a partial allowance was made to the plaintiff for the expenses of reclamation aforesaid, and in the awards, made as above stated, the board indicate them as including the amount legally claimable, if any such there be, by Jacob Ridgway, for freight paid, and moneys advanced by him on account of said cargo, other than the expenses of reclamation. That the right of Hays, and those claiming under him, is subject to the plaintiff's paramount right to the exclusive possession of the fund which stands in the place of the cargo, subject to account, &c. That the plaintiff's right of possession and lien were never devested or impaired; and he submits to the court to decree to him such absolute, entire, and exclusive possession and control over the same as the legal owner thereof. And he further insists, that he is entitled to have and retain out of the property, specifically, and out of the money so awarded, full payment of said balance of account, with interest, and all moneys expended in the reclamation, &c., with interest; and his commissions as consignee, they having been fully earned. And that the plaintiff hoped that the defendants would have admitted him to receive the money so awarded, &c., but they claim to have the legal right to receive the same without recognition of the plaintiff's lien thereon, and without paying him what is legally and equitably due to him as aforesaid. All which is contrary to equity, &c. In tender consideration whereof, and that the plaintiff can only have relief in this court "to regain possession of, and control over said property, of which he has been so wrongfully dispossessed, and which is now claimed by so many parties, so as to have the benefit and advantage of the lien, which, as consignee, he had and in equity is still entitled to have, and to reimburse himself, &c., he prays that he may, by the decree of this court, be placed in the full and exclusive possession of said indemnity, so awarded as aforesaid, subject only to account, &c., and that the proceeds of the property, and the money payable under the awards, may be decreed to stand in the place of the property so shipped and consigned as aforesaid, and be subject to all liens, &c., as if the property had never been seized, or had been specifically restored, and that the plaintiff may be adjudged to be entitled to the full mercantile commission upon said property; and to full reimbursement of his expenses, disbursements, &c., of all which, if deemed necessary, he prays that an account may be taken, &c.; and that the defendants may be enjoined from demanding and receiving the money, &c., and the secretary of the treasury and the treasurer of the United States from paying, &c.

The answer of Samuel Hays admits the shipment of "certain goods" to the plaintiff, to be sold on a commission of 2½ per cent., but denies that they ever came to the plaintiff's possession or were ever sold by him; but were seized and sold by the French; admits the awards, &c., and that the plaintiff incurred some inconsiderable trouble and expense, for which he has been twice compensated, once by the award of the commissioners, and once in settlement of accounts with this defendant. He denies that the plaintiff is entitled to any thing out of the award, &c. Mr. Woodbury, secretary of the treasury, and Mr. Campbell, the treasurer of the United States, say they are officers of the government of the United States, and not amenable to the jurisdiction of this court as to payment of money out of the treasury of the United States, or any other of their official acts, and therefore plead and except to the jurisdiction of the court in this case; but (under protest) admit the money to be in the treasury of the United States, and that it will "be duly paid to the parties to whom it shall appear that the moneys, so awarded, are legally and equitably due."

By the first section of the act of congress of the 13th of July, 1832 (4 Stat. 574), "to carry into effect the convention between the United States and his majesty, the king of the French, concluded at Paris on the 4th of July, 1831," the president is authorized to appoint three commissioners, whose duty it shall be "to receive and examine all claims under the convention, according to the principles of justice and equity, and the law of nations." And by the 6th section it is enacted, "that the said commissioners shall report to the secretary of state a list of the several awards made by them, a certified copy of which shall be by him transmitted to the secretary of the treasury, who shall thereupon distribute, in ratable proportions, among the persons in whose favor the awards shall have been made, such moneys as may be received into the treasury," &c., "first deducting such sums of money as may be due to the United States from said persons in whose favor said awards shall be made, and shall cause certificates to be issued, showing the proportion to which each may be entitled of the amount that may thereafter be received; on presentation of which, at the treasury," &c., "such proportions thereof shall be paid to the legal holders of such certificates."

The list of awards is in document No. 117 of the house of representatives, 24th congress, 1st session (page 16). And, among others, in the case of the Bordeaux Packet, there is an award—

| | |
|---|---|
| To Jacob Ridgway, for expenses of reclamations made by him at Antwerp and Paris | $ 1,750 00 |
| To the following named claimants for cargo, (including herein the amounts legally claimable, if any such there be, by Jacob Ridgway, for freight paid and moneys advanced by him, on account of such cargo, other than expenses of reclamation,) namely, the legal representatives or assigns of Samuel Hays | 10,164 98 |
| James Henderson, and sundry other claimants of the cargo | 106,899 35 |
| Whole amount awarded for Bordeaux Packet, | $118,814 33 |

The same kind of award was made in the cases of the Helena and Diamond; $900 in the former, and $1,950 in the latter, being awarded to Mr. Ridgway "for expenses of reclamation." There were also several other cases in which awards were made in favor of "the legal representatives" of the original owner of the property, without naming them.

Mr. Key, for defendants, moved to dissolve the injunction, and contended that the award of the commissioners for the plaintiff's expenses of reclamation was conclusive upon that subject, and that their rejection of his claim for commissions was also conclusive. His expenses have been twice paid, namely, in the award, and in the settlement of accounts between the plaintiff and the defendant, Hays, the defendant having given and paid his notes for the balance.

R. S. Coxe, contra. The board had no power to decide between contending claimants. Sheppard v. Taylor, 5 Pet. [30 U. S.] 685; Comegyss v. Vasse, 1 Pet. [26 U. S.] 193, 216. The consignee is the legal owner of the property; absolute, to the extent of his interest, even against the general owner. The sum awarded as indemnity stands in the place of the cargo, and subject to all its liabilities. [Sheppard v. Taylor] 5 Pet. [30 U. S.] 710. The property was only sequestered, not confiscated; and sequestration does not alter the property. The consignees never lost their legal title, nor could they be deprived of it by any tortious act of the French authorities. Griffith v. Ingledew, 6 Serg. & R. 439. The answer of Hays admits the whole foundation of the plaintiff's claim; and is only evidence in his favor so far as it is responsive to matters of fact within his own knowledge. As to the right of this court to enjoin the officers of the treasury of the United States. The court cannot control the executive as to any act, which, by the constitution, is to be done by the executive; but the officers of government may be controlled as to acts not officially belonging to them. To decide the legal or equitable rights of contending claimants is properly a judicial, not an executive, authority. The duty of the secretary of the treasury, in this matter, is not official under the constitution, nor discretionary; but he has a duty to perform under the treaty, and the act of congress for carrying it into effect. By that treaty and the act, the United States are merely to receive and pay over the money to those who may be entitled to it. They are mere stakeholders. Marbury v. Madison, 1 Cranch [5 U. S.] 169, 171.

Mr. Key, in reply. The plaintiff claims nothing but his commissions, and to them he has no right, because the property never came to his possession. Chit. Eq. Dig. 1169. The consignees had no right to incur labor and expense in reclaiming the property. They were not bound to do any thing. The consignors were bound to look to the United States, who were bound to see that France made proper retribution. This fund is not the proceeds of the cargo, but a compensation for the wrong done; and the bill claims these commissions jointly against all the shippers. The plaintiff claims the whole indemnity; but in equity he is entitled only to what is due to him. A factor is, in equity, only a trustee for his principal, and can retain only what is due to him. Burdett v. Willett, 2 Vern. 638. The commissioners were bound to decide the rights of conflicting claimants, because, by the 6th section of the act, the United States have reserved a right to retain any amount due to the United States by the persons in whose favor the award should be made. As to the exemption of the officers of the treasury from the jurisdiction of this court by way of injunction: Every case has been considered as depending on its own circumstances; and when the public interests would not suffer by it, the officers of the treasury have respected the injunction, but always under an express or implied protest. In Comegyss v. Vasse [supra], this court decided that the officers of the treasury were not liable to suit merely because they held the money of the United States. And that this court has not jurisdiction of the case because the fund has got into the treasury of the United States. 1 Chit. Eq. Dig. 725; 3 Mer. 102.

CRANCH, Chief Judge. The object of this bill is to enforce, specifically, a lien upon the defendant Hay's proportion of the indemnity awarded by the commissioners for the French spoliation of the cargo of the ship Bordeaux Packet, and for that purpose, without stating the amount claimed by the plaintiff, as consignee, for commissions and charges on that cargo, it prays that the whole indemnity for the entire cargo may be paid to the plaintiff, so that he may, out of the same, pay himself, not only those commissions and charges, but the balance of his general account against the defendant Hays, (without stating the amount of that balance,) and distribute the residue to

those who may be entitled thereto. This prayer is founded upon the legal right which the plaintiff would have had to the possession of the cargo, and of the proceeds of sale, if the cargo had not been seized by the French government.

The plaintiff is not contented that this court should give him equity, but he asks for strict law. He does not ask the court to enjoin only the amount of his claims upon the cargo, or its representative—the indemnity awarded—but he now claims, in this court, that he, as consignee, was and is entitled to receive the whole amount of the said indemnity, subject to account to the persons interested therein; that the rights of the shippers "are subject and subordinate to the paramount right and just claim" of the plaintiff "to the full, absolute, and exclusive possession of the same, subject to account with the" defendants, "and he submits to" the court, "to decree to him such absolute, entire, and exclusive possession and control over the same, as legal owner thereof"; and "he insists that he is entitled to have and retain out of the said property specifically, and out of the money so awarded as indemnity for the same, full payment of said balance of account, with interest up to the time of payment; and full remuneration and repayment to him of all moneys paid and expended by him, and his said late partner, in the reclamation, with interest, and his commissions, calculated upon the sales at Antwerp under the order of the French authorities." And as the plaintiff can have relief only in this court "to regain possession of, and the control over, said property, of which he has been so wrongfully dispossessed, so as to have the benefit of the lien which he had, and in equity is still entitled to have in and over the same, and to reimburse himself for the advances, expenses, &c., so as aforesaid made and incurred, he prays that the plaintiff may, by the decree of this court, be placed in the full and exclusive possession of the said indemnity, so awarded, subject only to account as aforesaid; and that the proceeds of the said property may be decreed to stand in the place of the property, and to be subject to all liens, claims, and rights, which did exist, or ought to have existed, in favor of the plaintiff against and upon the property, &c., and that the plaintiff may be decreed to be entitled to full mercantile commission, &c., and to full reimbursement of the expenses, payments, and advances so made and incurred as aforesaid, (of all which, if deemed necessary, he prays that an account may be taken under the direction of this court,) and that the defendants may be enjoined, &c., and such further and other relief, &c.

The specific relief prayed is, 1st. A decree for the possession of the whole amount of indemnity awarded; and. 2dly. A decree that the plaintiff may retain, out of that indemnity, the amount of the unascertained balance of the plaintiff's general account against the shippers; moneys paid and advanced in the rec-

lamation of the property; and his commissions. No decree is asked against the defendants personally for the amount, if any, due by them to the plaintiff.

Under the prayer for general relief, the plaintiff can have no relief which is not warranted by the allegations of the bill. There is no direct and positive averment in the bill, that any thing is due by the defendants, or any of them, to the plaintiff. It avers that services were rendered, and moneys expended, by the plaintiff, about the cargo, for the benefit of the shippers, but it is not averred that he has not been paid. The amount, or value of those services and expenses, is nowhere stated; nor is the amount of the commissions. It may be $100, or $100,000. If the plaintiff is not entitled to the exclusive possession of the whole fund, the whole ought not to be enjoined. If the whole should not be enjoined, we have no rule by which to say how much, if any, should be. When a party is obliged to ask the aid of a court of equity to enforce his legal rights, the court will compel him to do equity; and will only grant him relief to the extent of his equitable rights. The plaintiff's equity, in the present case, extends only to his claims for services and expenses. It is not necessary that he should have possession of more than that portion of the fund; and before an injunction can be supported to that extent, the amount and value of those services and expenses must be ascertained, or at least stated upon oath by the plaintiff. It is not necessary to the enjoyment, by the plaintiff, of all or any of his equitable rights, that he should have possession of the whole amount awarded; and as the plaintiff has not, in his bill, stated the amount of his equitable claims on the fund, we think the injunction ought to be dissolved. It is true, that an account is prayed by the plaintiff if it should be deemed necessary; but the fund ought not to be enjoined in the mean time, unless some certain amount be stated and verified by affidavit; and then the injunction, if granted, should only go to that extent. The court cannot say that an account is necessary unless some amount be claimed by the plaintiff and denied by the defendants. If the plaintiff will specify his claims, and the amount, the defendants may, perhaps, admit them; and then an account, which is an expensive proceeding, will be unnecessary.

It has been contended that the decision of the board of commissioners, rejecting the claim of Mr. Ridgway, is conclusive against him. To this there are two objections:

1. That the commissioners had no jurisdiction to decide ultimately between two or more conflicting American claimants. The act of congress of July 13, 1832 (4 Stat. 574), authorizing the appointment of the commissioners, declares their duty to be "to receive and examine all claims which may be presented to them under the convention, and which are provided for by the said convention, according to the provisions of the same, and the principles of justice, equity, and the law of na-

tions." And to "report to the secretary of state a list of the several awards made by them." It appears, by the first article of the convention, that the claims which the commissioners were to examine and report upon, were "the reclamations preferred against" the French government "by citizens of the United States, for unlawful seizures, captures, sequestrations, confiscations, or destructions of their vessels, cargoes, or other property." The claims, of which the board had cognizance, were claims against the French government; not against the owners of the property claimed, nor against the property itself. In each case, the great question for them to decide was, whether the property of American citizens had been unlawfully seized, &c., by the French government. So far as it was necessary to decide the national character of the property seized, they had authority to ascertain the legal owner; but if all the conflicting claimants were citizens of the United States, there was no necessity of their deciding the question of ownership between them. They might select the name of the person who seemed to them to be the legal owner, or they might name all the conflicting claimants, and leave them to litigate their rights in the municipal courts of the country; or they might award in favor of "the legal owners," without naming them, as they did in several cases, as will appear by reference to the list of awards returned by them to the secretary of state. See printed documents of the house of representatives, No. 117 of the 1st session of the 24th congress. In accordance with this opinion is that of the commissioners under the Florida treaty, in Sheppard v. Taylor, 5 Pet. [30 U. S.] 685; and of the supreme court of the United States, in Comegyss v. Vasse, 1 Pet. [26 U. S.] 212. In that case, the commissioners under the Florida treaty had awarded a sum of money to Comegyss and others, assignees of Vasse under the bankrupt law. Vasse brought his suit at law against his assignees to recover that amount, upon the ground that his right of indemnity from Spain did not pass by the assignment.

Mr. Justice Story, in delivering the opinion of the court, says, (on page 212): "It has been justly remarked in the opinion of the learned judge who decided this cause in the circuit court, that it does not appear, from the statement of facts, who were the persons who presented or litigated the claim before the board of commissioners; nor whether Vasse himself was before the board; nor who were the parties to whom, or for whose benefit the award was made. We do not think that the fact is material upon the view which we take of the authority and duties of the commissioners. The object of the treaty was to invest the commissioners with full power to receive, examine, and decide upon the amount and validity of the asserted claims upon Spain for damages and injuries. Their decision, within the scope of this authority, is conclusive and final. If they pronounce the claim valid or invalid; if they ascertain the amount, their award in the premises is not reëxaminable. The parties must abide by it as the decree of a competent tribunal of exclusive jurisdiction. A rejected claim cannot be brought again under review, in any judicial tribunal; an amount once fixed, is a final ascertainment of the damages or injury. This is the obvious purport of the language of the treaty. But it does not necessarily or naturally follow, that this authority, so delegated, includes the authority to adjust all conflicting rights, of different citizens, to the fund so awarded. The commissioners are to look to the original claim for damages and injuries against Spain itself; and it is wholly immaterial, for this purpose, upon whom it may, in the intermediate time, have devolved; or who was the original legal, as contradistinguished from the equitable owner, provided he was an American citizen. If the claim was to be allowed as against Spain, the present ownership of it, whether in assignees or personal representatives, or bonâ fide purchasers, was not necessary to be ascertained, in order to exercise their functions in the fullest manner. Nor could they be presumed to possess the means of exercising such a broad jurisdiction, with due justice and effect. They had no authority to compel parties, asserting conflicting interests, to appear and litigate before them, nor to summon witnesses to establish or repel such interests; and under such circumstances it cannot be presumed, that it was the intention of either government to clothe them with an authority so summary and conclusive, with means so little adapted to the attainment of the ends of substantial justice. The validity and amount of the claim being once ascertained by their award, the fund might well be permitted to pass into the hands of any claimant; and his own rights, as well as those of all others who asserted a title to the fund, be left to the ordinary course of judicial proceedings in the established courts, where redress could be administered according to the nature and extent of the rights or equities of all the parties. We are, therefore, of opinion, that the award of the commissioners, in whatever form made, presents no bar to the action, if the plaintiff is entitled to the money awarded by the commissioners." The powers of those commissioners were "to receive, examine, and decide upon, the amount and validity of the claims against Spain." The powers of the commissioners in the present case, are "to receive and examine," and to "report to the secretary of state a list of the several awards made by them." The reasoning of the judge in that case applies, therefore, with greater force to this.

2. The claim of Mr. Ridgway, as consignee and owner, was in the right of the firm of J. Ridgway, Mertens & Co., and it is admitted in argument that Mertens was not a citizen of the United States. His share of the loss, therefore, was not a claim of which the commissioners had cognizance. But although they rejected his claim as legal owner of the whole

cargo by virtue of the consignment, they did not reject his claim for freight paid, and moneys advanced, as against the sum awarded; but they did not consider him as having a direct claim against the French government therefor. Their decision, so far as it was a claim against that government, is conclusive; but not as to his claim against the sum awarded. His claim against the French government for commissions, was also rejected; it being one of a rejected class of claims; for if indemnity be made to the shippers, the commissions, if due at all, are a charge upon the indemnity, in the same manner as they would have been upon the proceeds of sale, if there had been no seizure. But this rejection is no bar to the plaintiff's claim on the fund, for commissions, if he is entitled to them. He was, and perhaps is, entitled to a just and equitable remuneration for his services and expenses; the commissions may or may not be the proper measure of that remuneration. Whether the sum allowed him by the commissioners for expenses of reclamation, and the amount charged in his account and settled by Mr. Hays in May, 1811, are a full compensation, does not appear, and the court has no means of deciding that question. It is said that the consignees had no right to make the reclamation and incur the expenses, &c., but that the shippers ought to have applied, at once, to the United States. But if they had, the answer would probably have been: "Go and complain to France; we cannot suppose that she will not do you justice. After using in vain all reasonable endeavors to obtain indemnity from her, come to us, and we will make a national affair of it." The consignees, as agents of the shippers did so, and they are, or were, justly entitled to reasonable compensation for their trouble and expenses.

An objection was taken to the number of the defendants. But the plaintiff's claim is for expenses, &c., applicable to the whole cargo, and it was necessary to make defendants of all who were interested in the apportionment of those expenses. It has also been objected, that all the defendants have not answered it. But they are absent; and no process has been served upon them, nor has any notice been given by publication, as is usual in such cases. The principal defendant, the original owner and shipper of the cargo, has answered, and the other defendants claim under him, and, according to the nature of the case, he must be supposed to have the best knowledge of its circumstances; and he avers that the plaintiff has been twice paid for his trouble and expenses; and denies that he is entitled to any thing out of the award. If the plaintiff had stated his case fully, I do not know that this answer would have been sufficient to dissolve the injunction; but, upon the bill itself, I think the injunction must be dissolved. If the court should be of that opinion, it will be unnecessary to decide as to the authority of the court to enjoin the payment of money out of the treasury of the United States. It may be observed, however, that in the present case, the fund is placed in the treasury of the United States as in a place of deposit only, and the United States are merely trustees; and if the award of the commissioners is not conclusive between conflicting American claimants of the fund, and if the ordinary judicial tribunals of the country have jurisdiction to decide such conflicting claims, I cannot see why the United States, in cases in which they are merely stakeholders, should not submit to those decisions, and aid those tribunals in the due administration of justice. See Ellis v. Earl Gray (in equity) 6 Sim. 214, where the lords commissioners of the treasury were enjoined from paying an annuity.

The plaintiff having had leave to amend his bill, the motion to dissolve the injunction came on again to be argued upon the amended bill and answer, and was further postponed to the 2d of February, when the court (THRUSTON, J., absent) dissolved the injunction, except as to the amount claimed by Mr. Ridgway.