Hbvixjs, J.
dissenting. This was a special action on the case, brought by the plaintiffs, who were commissioners appointed by a decree of the Orphans’ Court of the county of Burlington, to sell the real estate of which Joseph C. Haines died seized. The action was brought for the specific difference between a first and second sale of a farm, made by the plaintiffs. The first sale was on the 2d of January 1841, when the defendant became the purchaser lor the sum of $117 per acre; and the second was on the 1st of July of the same year, when the premises were sold to a different purchaser at $99 per acre. The plaintiffs claim the difference between these sales, and the costs of the second sale.
The declaration contains two counts. The first sets forth, with particularity, the proceedings in the Orphans’ Court, from which the plaintiffs derive their authority to sell, the report of sales, the decree of confirmation, order to make deeds, &c.; also, the covenant or agreement of the defendant to pay and secure the purchase money, at the time and place therein specified; and if he failed so to do, to pay the deficiency and costs of a second sale; with an averment, that the plaintiffs were at the place at the time specified, and ready to deliver and actually tendered the *448 deed to the defendant, but that he refused to accept the same and comply with this contract.
The second count is substantially like the first, merely omitting to set forth the preliminary proceedings in the Orphans’ Court. Issue was joined on the plea of non-assumpsit, and a trial had before the Gloucester Circuit in March 1843, which resulted in a verdict for the plaintiffs for $2653.83.
Several reasons are urged, in support of the motion to set aside this verdict.
The first is, that the plaintiffs had no legal right, or authority to sell the land in question; and consequently could make no legal title for the same; and that the defendant was not legally bound to take the title tendered. It is insisted that the sale was void, or at all events voidable,
1st. Because the statute did not authorize the Orphans’ Court, to decree a sale of the lands; or if it did,
2nd. That the proceedings in that court were irregular and defective, ánd for that reason the sale is voidable.
The first act of the legislature, which invested the Orphans’ Court with the power of decreeing a partition of lands, was passed on the 16th day of December 1784, but gave to that court no power to decree a sale, in case no partition could be made. On the 11th of November 1789, another act was passed for the partition of lands held by coparceners, joint tenants, and tenants in common ; which recited the delay, expense and oppression of writs of partition, and gave to a justice of the Supreme Court, and the judges of the Common Pleas, authority to appoint commissioners to make partition. But this act did not vest either the justice or judges with the power of decreeing, or the commissioners with the power of making, a sale, where the lands' could not be divided without prejudice. On the 7th of February 1816, the legislature passed another act entitled “ An Act supplementary” to both the Acts of 1784 and 1789; which provides “ that, upon application for partition of lands under either of the two last mentioned acts, if the commissioners shall be of opinion, that the land cannot be divided without prejudice to the owners, then either of the courts, to which application shall be so made, may order the commissioners to sell, &c.” On the 13th *449 of June 1820, another Act was passed, entitled “ An Act to ascertain the power and authority of the Ordinary and his surrogates, to regulate the jurisdiction of the Prerogative court, and to establish an Orphans’ Court in the several counties of this state.” This act was designed to regulate the practice in the Orphans’ Court; and it embraced most if not all antecedent enactments on that subject, which were intended to be continued in force; and it repealed several other acts then in force, and among them the act of 1784. In the 19th section of this Act of 1820 Rev. L. 782, Elm. Dig. 384, it is provided that, “ when commissioners, appointed under that act to divide real estate, shall think if cannot be done without prejudice to.the owners, they may proceed according to the directions of the act, entitled, ‘ An act for the more easy partition of lands held by coparceners, joint tenants and tenants in common,’ and by an act entitled ‘ An Act to ascertain the power and authority of the Ordinary and his surrogates to regulate the jurisdiction of the Prerogative court and to establish an Orphans’ Court in the several counties of the state ’ passed the 7th of February 1816.” Now, the acts referred to in the 19th section of the act of 1820, were not passed on the 7th of February 1816, but one was passed in 1784, and the other in 1789. The act of 1816 is an act “supplementary” to those referred to by their title, in the 19th section. It is manifest therefore, that the legislature intended to refer to the act of 1816,. which they have done by its date, and not to the acts of 1784 and 1789 ; but in doing so, have misrecited it, by omitting the words “an act supplementary to the act entitled.” The repeal of the act of 1784 will not affect the question • for the provisions of that act touching the division of lands, are incorporated in, and re-enacted by, the act of 1820. The question then is, “are the provisions of the 19th section of the act of 1820 nugatory, on account of this misrecital ? I think not. The legislature most clearly intended to provide for a sale of lands of a decedent, where a partition could not be made without prejudice to the owners. Such a power had existed in the Orphans’ Court, and been exercised by it from 1816; and whilst they were legislating upon the general powers of that court, they re-enacted the same provision. But it is insisted, that for this misrecital, *450 the plaintiffs, had no legal authority to make a sale of the lands in question, or to make title therefor. That their sale was null and void, and the defendant under no legal obligations to take the deed tendered to him. In this the defendant is wrong. A mistake in the title of a statute may be corrected,- if the identity of the statute can be ascertained. Dwar on Stat. 653, 654, The identity of the statute, here referred to, is ascertained, as well from its subject matter, as from the time of its passage. And such construction ought to be put upon a statute, under consideration, as will prevent, if possible, its being defeated ; 15th John. R. 358. Unless this statute is construed to refer to the supplementary act of 1816, its clear object and design must be defeated. The intention of the makers must be had in view, in the construction of statutes; and when it can be discovered, it should be followed with reason and discretion, Bac. Abridg. tit. Stat.; 3 Cow. 89, though it may be contrary to the letter of the statute. “ That such intention is the proper method of inquiry,” say Chief Justice Thompson in 15 John R. 380, H is too well settled to admit of dispute.” Under this act of 1820, the Orphans’ Courts of this state have, since its passage, exercised the power of decreeing sales of lands. Such has been understood to be the law, and Chief Justice Marshall observes, that “ in construing statutes, on which land titles depend, infinite mischief would ensue, should a new rule prevail, from that which has long been established.” 5 Cranch 32. It would be impossible to estimate the extent of the evil and injustice consequent upon an adjudication by this court, that all the titles in New Jersey, which, for the last quarter of a century, have been derived through decrees of sale of these courts, on application jfor partition, were null and void. My opinion is, that the order of sale, made by the Orphans’ Court of Burlington in this case, is not void, and that the verdict, for that cause, should not be set aside.
But it is further urged, that if the decree of sale is not absolutely void, it is nevertheless voidable, as the proceedings before that court were irregular and defective; and that the defendant was not bound to accept a voidable title, and pay his money. The point of this objection is, that, in the order to divide the lands in question, the court omitted to specify the number of shares, *451 into which they were to be divided, and the proportions of the respective tenants in common. The 12th sec. of the act of 1820 gives to the Orphans’ Court the power “ to order and direct a division of the real estate of an intestate, to be made in such shares and proportions among the heirs, as they may be entitled to under the laws of this state, directing the descent of real estate.” This is the only direction given by the statute. The petition, for the appointment of commissioners to divide, sets forth that Joseph C. Haines died seized of the lands in question, leaving a widow, and four children, naming them, who are his only heirs at law; and prays that partition be made between the said heirs in such shares and proportions, as by the laws of this state they are entitled to. The order recites, that the matters in the petition appear to be true, and then proceeds to appoint the plaintiffs commissioners to make division of the lands, between the said heirs, naming them, by metes and bounds, to be held in severalty in such shares and proportions, as they are respectively entitled to in the manner prescribed by law. "There is no such irregularity or defect here, as will vitiate this order for partition. Both the petition and order show, that the owners of the lands were the four children of the intestate, and his only heirs at law; and the statute of descent assigns them equal estates, in equal shares in said lands. Had partition been made between them under that order, neither could have successfully urged this objection, on a motion to set aside the partition. The statute; prescribes no form in which the order shall be drawn; if it is in substantial compliance with the act, it is sufficient. Here, the order is not only in conformity with the substance of the law, but with the precedents found in the books. There is no uncertainty upon the face of the proceedings, either as to the persons entitled, or the shares and proportions, to which they are by law entitled. Neither the order of partition, nor of sale, nor the sale itself, was voidable for this cause; and therefore the plaintiffs were not offering the defendant a void or voidable title, and the verdict ought not for that reason to be set aside.
The next ground urged in support of this motion is, that the order is to divide a reversionary interest, and not an estate in possession. The lands were subject to or under a lease for *452 three years, which had not yet expired, when the order of sale was made, or when the sale took place. And the counsel contend, that under the authority of Stevens v. Enders, 1 Green 271, the court had no jurisdiction to order partition of such estate. The case cited has no application to the one before us. There the party, applying for partition, was owner of three-fourths of the premises in fee, and M. Stevens of one-fourth for life, with remainder to her children in fee. The order of partition, in that case, was set aside, on the ground that tenants in remainder could not be parties to a writ of partition at common law; and that the act of the legislature applied only to such estates as were subject to partition at common law, or under the 31 and 32 of Hen. 8. In this case, the owners are not seized of an estate in remainder, but of a present estate in fee simple in possession; for the estate of the tenant and the heirs at law, is but one estate, and the possession of the tenant, the possession of the landlords.
It is further objected, that the plaintiffs did not tender to the defendant a deed for the lands, at the time and place mentioned in the conditions of sale; and that the defendant was therefore absolved from his contract, and not bound to accept it at any other time; and for that cause it is urged that this verdict should be set aside.
One of the conditions of the sale, at which the defendant was purchaser, is “ That the deeds, for the respective tracts of land sold at this vendue, will be executed and ready for delivery to the respective purchasers, on the 20th day of March at 10 A. M. of that day, at the house of Charles Bryan, inn-keeper in Mount Holly; and in case any of said purchasers shall neglect to receive his deed, at the said time and place, and pay the purchase money and secure the same as aforesaid, the property will be advertised and sold again; and if it produce a less sum than the former bid, and interest and expenses, the purchaser will be held liable for the difference.”
The evidence touching this part of the case and applicable to the objection just mentioned, as it appears upon the case presented us, is, “ That on the 20th of March, at early candle light in the evening, at the house of C. Bryan, one of the plaintiffs *453 tendered to the defendant a deed for the lands he had purchased, and demanded payment according to the condition of his purchase. The defendant took the deed and asked if it was a warranty deed; and was told that it was such a deed as commissioners usually give. He then handed it back, or laid it on the table, saying he would not take it, unless it was a warranty deed. At the same time, a deed of release from Mary L. Haines, for her dower right, was tendered to him.” It is not denied, but that such deeds, drawn in proper form and conveying a title to the lands purchased by the defendant, were tendered to him ; but it is said they were not tendered at the time specified in the conditions. The case shows that the defendant arrived at Bryan’s about a quarter before ten o’clock, on the morning of the 20th of March, and remained there about an hour; and when he left, he requested the landlord to notice the time of his departure. When he arrived at Bryan’s, he announced that he had come to fulfil his contract and take a deed, as he had before done to the persons, who came with him. When he left Bryan’s, which was about a quarter before 11 o’clock, he went to Bristol, in Pennsylvania; and returned again in the evening, and stopped at Bryan’s, where he found the plaintiffs, and where the deeds were tendered to him. It was also proved by a witness, that he saw the defendant, when he left home in the morning, put a roll of bank bills in his pocket book, saying at the time, that he was going to Mount Holly to receive the deed for the farm he had purchased. It was further proved, that all the plaintiffs were at the place mentioned in the conditions of sale, about 12 o’clock on the 20th of March, and then and there executed and acknowledged the deed, and that the release of dower was at the same time signed and acknowledged, and ready for delivery. That one of the plaintiffs resided in Mount Holly, and within a short distance of Bryan’s hotel. These are all the material facts proved, necessary to be noticed in order to a clear understanding of the questions raised upon them ; and from these it is contended, that the plaintiffs did not make the tender at the time they were bound to make it by the terms of their contract, or the time they averred in their declaration they had made it; and that no subsequent *454 tender by the plaintiffs, was such a performance on their part, as can enable them to maintain their action.
The covenants between the parties, or rather the agreements between them, are mutual and dependent; and neither party can maintain his action against the other for his default, without proving a performance, or an offer to perform his own part of the contract, or at least alleging and proving some lawful and valid excuse for not doing so. 2 John. R. 207; 9, Ib. 209; 2 Green, 446. Here the plaintiffs aver, that they were ready and willing to perform their part - of the agreement, and actually tendered to the defendant a deed for the lands, according to their contract, but that he refused to accept the same and pay the money. To support this averment, they proved, that they were ready to deliver the deed at the place where it was to be delivered, about mid-day of the day when it was to be delivered; and that they remained there and made the tender on the same day and at the earliest practicable moment, that they could do so, after the deed was prepared and executed. In this proof I think the plaintiffs have maintained their averment, and shown their readiness and their offer to perform, according to the true spirit and meaning of their bai’gain. It is true that the conditions of sale specified ten o’clock, as the time when the deed was to be prepared and ready for delivery ; but this could not be understood by the parties as the only moment of that day, in which they could legally perform their own part, or claim from the other the performance of his part. It is to be esteemed an hour fixed and agreed upon, for the greater safety and convenience of the parties, and to secure their personal attendance with the least loss of time; to enable the one to prepare the conveyance and examine the securities, and the other to take counsel, if necessary, as to the form and substance of the deed, and the validity of the title; and that sufficient time might be allowed, for all these matters to be performed with caution and due regard to the interest of the parties, during the day. Such is the fair and reasonable construction of the contract, and it would be a libel upon the law, to say, that the plaintiffs could make the delivery of the deed, or the tender of it,-at that precise hour only ; and for their failure to do so, that they lost all legal right and benefit from their eon- *455 tract. Suppose they had appeared at the hour of ten, with their deed ready for delivery, and the defendant had not arrived till some minutes after, w'ould they have been legally justified in withholding the conveyance on his tender of the money ? Or, if he had been punctual in his attendance, but found the deed defective in form, would he have been justified in rescinding the contract, and refusing to wait till the same could be corrected ? Such is not the law, nor the reason, nor justice of the case ; and no ease can be found to sustain so strict a construction. Time may, and sometimes does, enter into the essence of a contract; but the evidence does not show, that the particular hour was at all essential to the substance of this contract. The plaintiffs were acting in a public and official capacity, having no personal interest in the contract, and the defendant had no right to infer from their delay in appearing at the appointed hour, that they intended to evade their agreement; but other facts proved tend strongly to fix such a design on the defendant himself. I am of opinion, that the plaintiffs proved their averment of performance, substantially as contained in their declaration, and according to the true spirit and meaning of their contract; and this makes it unnecessary to consider another answer, which they have given to this objection, to wit, that a letter written by the defendant on the 16th of January, 1841, had absolved the plaintiffs altogether from the necessity of tendering him a deed.
Another ground taken by the defendant, in support of his motion is, that the conditions of the second sale differed from those of the first. This must have been necessarily so, in part; for a second sale could not legally take place, until the time mentioned for the first payment to be made, according to the terms of the first sale, had transpired.
It is admitted that the vendors on a second sale, where the purchaser at the first has neglected to comply with the terms, and is legally responsible for the difference, have no right to impose new, extraordinary and oppressive conditions, such as will prevent fair and reasonable competition, or prevent the property from bringing a fair and reasonable price; but I know of no principle of law, which will bind them to the precise terms of the former sale. They have a right so to frame their conditions, *456 as will be equally beneficial to themselves. .And such I apprehend was the case in this instance. Upon the first sale, the purchaser had two months and twenty days, to make his first payment of one-third of the purchase money» By the second sale he had three months and twenty-five days, to make it. By the terms of the first sale, the second payment was to be made on the 20th of March 1843, with interest from March 1841, and the purchaser to be entitled to the rents from the latter year. By the terms of the second sale, the second payment was to be made on the 25th of March 1843, with interest from March 1842, and the purchaser to be entitled to one years rent only. The last payment according to the terms of both sales was to be made at the same time, with interest from 1841, according to the first, and from 1842 according to the second sale. It will be seen from this that 'the terms of the first sale were more beneficial to the estate represented by the plaintiffs, than those of the second sale; because, if the defendant had complied with his purchase, the vendors would have received the one-third of the purchase money in March 1841, and the interest on the balance from that time till paid ; which would be equivalent to the interest on the whole purchase money, amounting to $17,175.60, or an annual interest of $1030.50, whilst the annual rent was only $600. It follows then, that the terms of the second sale, though nearly assimilated to the first, were more beneficial and less onerous'to the purchaser, The defendant, therefore, has neither a legal nor equitable ground to complain, that injustice was done him by the terms of the second sale ; nor has he any legal right, for that cause, to claim, that the verdict should be set aside.
It is also objected, that there was no lawful evidence before the jury, of the precise number of acres in the farm. The petition for division, and the order appointing commissioners, described the tract as containing 150 acres more or less. The commissioners, acting as the agents or officers of the court and under their official oath, reported that it contained 146xVv acres, which report was confirmed by the court, without exception, and an order made that the deeds should be made out and given to the purchaser. I do not mean to say, that those proceedings in the Orphans’ Court are conclusive evidence of the quantity of *457 land sold; but I apprehend they were prima facie evidence of the quantity, and if the defendant alleged a mistake, he might perhaps have required further proof. But this does not seem to have been a controverted matter, at the trial; and unless it is made to appear, in some way, that an error was committed by the jury, and injustice done to the defendant by the verdict, in this respect, we are not warranted in interfering with it and setting it aside. It has not been pretended on the argument, that the tract contains more or less acres, than the jury have estimated it at; and to send the cause back for another trial, upon this ground, would be oppressive to both parties, and in no wise promote the ends of justice. -
The last exception, taken to the trial and verdict, is the Judge’s charge. Upon-examining that, although I am not prepared to sanction all the learned Judge said to the jury, and especially the remark, “ That as the defendant had not proved that he tendered the money, it was not necessary for the plaintiffs to prove that they tendered the deed,” yet, as the plaintiffs did prove an actual tender of the deed, and as the verdict is not, in my opinion, either against law or evidence or the weight of evidence, and as I can find no misruling of the court in the progress of the trial, I think the verdict ought to stand, and the rule ought to be discharged.

Verdict set aside and a new trial ordered.

Whitehead, J. and Randolph, J. did not hear the argument and expressed no opinion.
Cited in Shinn v. Haines, 1 Zab. 342; Stryker v. Vanderbilt, 1 Dutch. 505; Long v. Hartwell, 5 Vr. 128; Mut. Ben. Life Ins. Co. v. Hillyard, 8 Vr. 484.