## PETER E. FREVALL, APPELLANT, *vs.* FRANKLIN BACHE, ADMINISTRATOR OF JOHN DABADIE, DECEASED, APPELLEE.

A claim for the sum awarded by the commissioners under the treaty of indemnity with France of July fourth, 1831.

The powers and duties of the commissioners under the treaty of indemnity with France, were the same as those which were exercised under the treaty with Spain, by which Florida was ceded to the United States ; as decided in the cases of Comegys *vs.* Vasse, 1 Peters, 212, and Sheppard *vs.* Taylor and others, 5 Peters, 710. There is a difference in the words used in the Treaty and Act of Congress, when defining the powers of the Board of Commissioners ; but they mean the same thing. The rules by which the Board acting under the French treaty is directed to govern itself in deciding the cases that come before it, and the manner in which it is constituted and organized, show the purposes for which it was created. It was established for the purpose of deciding what claims were entitled to share in the indemnity provided by the treaty ; and they of course awarded the amount to such person as appeared from the papers before them to be the rightful claimant. But there is nothing in the frame of the law establishing the Board, or in the manner of constituting and organizing it, which would lead to the inference that larger powers were intended to be given than those conferred on the commissioners under the Florida Treaty.

ON appeal from the Circuit Court of the United States for Washington county, District of Columbia.

This case was argued by Mr. Coxe, for the appellant; and by Mr. Key, for the appellee.

Mr. Chief Justice TANEY delivered the opinion of the Court.

This case comes before this Court upon an appeal from the Circuit Court for the District of Columbia.

The controversy has arisen out of the shipment of a cargo of cotton, indigo, and coffee, made in the fall of 1809, in the brig Spencer, from Philadelphia to St. Sebastians, or Port Passage. The vessel duly arrived, and discharged her cargo. She was afterwards seized, and the cargo sequestrated by the French government. In the following year, the vessel was liberated, and returned to the United States: but the cargo was never restored.

The cargo of the Spencer thus sequestrated, was entitled to share in the indemnity provided by the treaty with France, of July 4, 1831. But a dispute arose before the commissioners appointed under that treaty, as to the right to five-sixteenths of the indemnity allowed for this cargo. The opposing claimants were the present appellant, who claimed for the whole of the cargo, and the appellee, who claimed for the said five-sixteenths. The commissioners awarded in favour of the latter.

The appellant therefore filed his bill against the appellee, in the Circuit Court for Washington county, in the District of Columbia; alleging, among other things, that a certain Andrew Curcier, then a resident merchant in Philadelphia, was the owner of the Spencer

and her cargo on the voyage in question; that the said seizure and sequestration gave him a valid claim against the French government; which he afterwards, for a valuable consideration, transferred to the claimant, who took it without notice of any other claim. And he charges also, that if Dabadie, the appellee's intestate, ever had an interest in the cargo, it had been relinquished to Curcier by a settlement which took place between them in 1818, long before the assignment to the complainant. And he produces, as an exhibit, the account which, as he alleges, contains this renunciation: and he prays that the appellee may be enjoined from receiving the five-sixteenths awarded to him by the commissioners; and that the Secretary of the Treasury, and the Treasurer of the United States may be enjoined from paying it.

To this bill the appellee put in his plea and answer, pleading the award of the commissioners in bar of the complainant's bill; and also insisting, by way of answer, Dabadie owned the five-sixteenths of the cargo in question, and had a valid claim, on that account, against the French government; that he had never transferred or relinquished it to Curcier; and that his (Dabadie's) administrator was entitled to receive it out of the indemnity provided by treaty: and he exhibits as the evidence of his interest in this cargo, an account, signed by Andrew Curcier, in behalf of himself and Stephen Curcier, and dated June 16, 1810.

A general replication was put in by the complainant: and the testimony of a witness residing at Marseilles, in France, was taken by agreement of parties. This witness, it appears, is a native of France, but resided in Philadelphia; and was engaged in commerce there from the year 1796 until 1827, when he returned to his own country, where he has ever since resided. He was intimate with Curcier and Dabadie; and he states in his testimony, that in the year 1818, at Philadelphia, he, as umpire and mutual friend, settled an account between them, in which all differences were finally adjusted; that the voyage of the Spencer to St. Sebastians, and the ownership of her cargo, were settled in that account; and that by the terms of the settlement, the claim on the French government for indemnity was afterwards to belong to Curcier. The witness mentions circumstances which took place at the settlement, to show that his memory is firm and accurate in relation to it. He states that it was reduced to writing in the shape of an account current, as was customary; and that two accounts were made, exactly the same in every particular, both original, and one of them delivered to each of the parties. No account current, however, was exhibited to the witness at the time of his examination, and none therefore has been identified by him as the account current settled between the parties in 1818: and he states that he had not recently seen it, nor had any communication from any one in relation to its contents.

Upon the hearing, the Circuit Court dissolved the injunction, and dismissed the bill: and the case is brought before this Court by the appeal of the complainant.

Two questions have been presented for consideration here:— 1. Is the decision of the commissioners appointed under the treaty with France, conclusive upon the rights of the parties? 2. If the case is not concluded by the decision of the commissioners, is the appellant, upon the testimony in the record, entitled to relief?

Upon the first question, the Court have entertained no doubt. This case cannot, we think, be distinguished from the cases of Comegys vs. Vasse, 1 Peters, 212, and Sheppard and others vs. Taylor and others, 5 Peters, 710. It has been argued on the part of the appellee, that these cases were decided under the treaty with Spain; and that the language of that treaty, and of the act of Congress creating the board of commissioners under it, differs materially from the treaty and act of Congress under consideration, when defining the powers of the board. It is true, that there is a difference in the words used; but in our judgment, they mean the same thing. The rules by which the board is directed to govern itself in deciding the cases that come before it, and the manner in which it was constituted and organized, show the purposes for which it was created. It was established for the purpose of deciding what claims were entitled to share in the indemnity promised by the treaty; and they of course awarded the amount to such person, as appeared from the papers before them, to be the rightful claimant. But there is nothing in the frame of the law establishing this board, or in the manner of constituting and organizing it, that would lead us to infer that larger powers were intended to be given than those conferred upon the commissioners under the Spanish treaty. The plea therefore put in by the defendant in bar of the complainant's bill, cannot be sustained; and the case is fully open before this Court upon its merits.

Upon the second point there has been much more difficulty. It is very clear that Dabadie was the owner of five-sixteenths of the cargo of the Spencer, upon the voyage in the fall of 1809, from Philadelphia, to St. Sebastians or Port Passage. This is abundantly proved by the account stated and signed by Andrew Curcier, for himself and Stephen Curcier, in June, 1810. For Dabadie, in this account, is charged with thirteen thousand seven hundred dollars and thirteen cents, for his five-sixteenths of the cargo, and with three thousand nine hundred and ninety-three dollars and ninety-five cents, for insurance upon it. He was therefore entitled to indemnity to the extent of his interest in the cargo, and had a valid and just claim for it against the French government.

Has this interest been transferred to Curcier? The witness above mentioned deposed that it was relinquished to him, and the agreement reduced to writing in an account current, settled in June, 1818. If such an account had been produced by the plaintiff, it would decide the controversy in his favour. He does indeed produce an account settled between the parties, with mutual acquittances, in June, 1818. But it is not such an account as the witness describes. Neither of the sums with which Dabadie was debited in the account of 1810, for his share of the cargo, and for insurance,

appear in any way in this account of 1818. The acquittances therefore then executed do not apply to them. They apply only to claims which the parties may have had against one another; and not to claims which either of them had against the French government, or any other third party.

There is an item in the account of 1818, which has been much relied on by the complainant; in which Dabadie is credited with five-sixteenths of the proceeds of the Spencer's cargo on this voyage, sold at six months' credit. But there is nothing to show that any part of the outward cargo was sold in France. On the contrary, the bill states that the whole cargo was sequestrated, and claims indemnity for the whole: and the answer admits the seizure of the whole, and claims indemnity for five-sixteenths of the entire cargo. We cannot therefore suppose that this item refers to the proceeds of her outward cargo: for such an inference would be contrary to the allegations of both the bill and the answer. And if it refers to a homeward cargo, there is no evidence to show that such a cargo was brought by the Spencer; nor, if brought, by what means or out of what funds it was procured. There is certainly nothing in the record to connect this item in any manner with the outward cargo, which was seized; nor to alter the rights of property in it. It does not answer the description which the witness gives of the account which he settled in 1818, as the umpire and mutual friend of the parties; and it is highly probable that the transaction of which he speaks, may, from the lapse of time, have been confounded with some subsequent voyage of the same vessel, out of which disputes may have arisen between the parties. He states that he has not seen the account, nor communicated with any person about it; and after twenty years have passed, it ought not to be a matter of surprise or reproach if some of the items of an account, and some of the circumstances connected with the settlement of it, were not accurately remembered. At all events, there is nothing in the account of 1818, or any account in the case, that would justify us in saying that the claim of Dabadie to the indemnity in question was transferred to Curcier, as charged in the bill.

The decree of the Circuit Court is therefore affirmed.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and decreed by this Court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.