### JAMES FOOT, Executor vs. JOHN KNOWLES.

A pension was granted to the widow of an officer, conformably to the acts of congress, passed on the 4th of July 1836, and the 3d of March 1837, and she died before the pension certificate was issued, having disposed of her pension by will: *Held*, that the pension was payable to her executor, and not to her children, and that he was entitled to recover the same from the children, to whom it had been paid by order of the officers of the United States, who had charge of the matter of pensions.

An objection to a writ, that it is not under the seal of the court from which it issued, is waived by the defendant's submitting his cause to the court on the merits, and he cannot afterwards avail himself of the defect by motion in arrest of judgment.

ASSUMPSIT to recover money paid to the defendant by the United States, as part of the pension granted to Prudence Foot, the plaintiff's testatrix.

The case was submitted to the court on the following facts A pension was granted to the testatrix, as the widow of her first husband, James Knowles, conformably to the third section of the act of congress, passed on the 4th of July 1836, and the act explanatory thereof, passed on the 3d of March 1837. The pension certificate was issued to her from the war department, August 21st 1839, stating that she was entitled to receive $ 204·19 per annum, commencing March 4th 1831, and to continue while she should remain unmarried.

The testatrix died on the 17th of August 1839, leaving a will which has been duly proved and allowed, and by which she bequeathed her pension to the plaintiff and others, giving no part of it to the defendant. She left two children of her first marriage, of whom the defendant was one, and also two children of her last marriage. The defendant received one fourth part of the amount of said pension, under the orders of the officers of the United States, who had charge of the matter of pensions and directed it to be paid to the four children of the testatrix.

Defendant to be defaulted, if the action can be maintained ; otherwise, the plaintiff to become nonsuit.

This case was argued at the last September term.

*Briggs & Lanckton,* for the plaintiff.

*Wells & Rockwell,* for the defendant.

*Foot, Executor v. Knowles.*

DEWEY, J.  The plaintiff, in his capacity of executor of the will of Prudence Foot, seeks to recover of the defendant certain money received by him from the United States, under the pension laws ; which money the plaintiff alleges was received to the use of the estate of his testatrix, and ought to be paid to him as her legal representative.

By a statute of the United States, passed June 7th 1832, pensions were granted to certain surviving officers and soldiers, who served during the war of the revolution ; and by the act of July 4th 1836, and an explanatory act of March 3d 1837, the widows of such officers and soldiers whose marriage took place before the expiration of their service, and who were widows at the time of the passing of the act of June 7th 1832, were entitled to receive, during the time they remained unmarried, the annuity or pension which would have been allowed to their husbands, if living at the time the said act was passed ; and the payment of said pensions was to be made from March 4th 1831. The testatrix, as the widow of James Knowles, filed her application for a pension under the provision of the acts above stated, accompanied with the proper evidence to show to the war department that she was legally entitled to the same ; which evidence was deemed satisfactory by that department.  The official certificate of the Secretary of War, certifying that the said Prudence Foot had been placed on the pension list, and was duly entitled to receive a pension from March 4th 1831, bears date August 21st 1839, which was four days after the decease of Mrs. Foot.  This fact being made known to the commissioner of pensions, he, under orders from the war department, directed the paying agent of the United States to pay the ·amount, stated in said certificate to be due and payable to Mrs. Foot, in equal shares to her four children, of whom the defendant was one.

The plaintiff insists that the sum thus paid by the United States was properly a part of the estate of the testatrix ; that it was the proceeds of an annuity or pension allowed her by the government of the United States ; that the fact of her legal right to have received such pension is established by the pension

certificate ; and that the amount received thereon should go into the hands of her executor, to be distributed or disposed of as a part of her estate. And this seems the proper view of the matter, unless the objections urged by the defendant shall be found of so controlling and decisive a character as to justify the defendant in retaining that portion of the money received by him.

The leading objection we understand to be, that upon a proper construction of the act of 1836, in the event of the decease of a widow thus entitled to receive a pension, before actually receiving the money due her for an antecedent period, the right to the same vests in her children and not in her legal representative.

It was attempted to maintain this position by the provision in § 4 of the statute of June 7th 1832, that in case of the death of any person, entitled to a pension under said act, between the time of the semi-annual payments directed by said act, "the proportionate amount of pay, which shall accrue between the last preceding semi-annual payment, and the death of such person, shall be paid to his widow, or, if he leave no widow, to his children." This provision, it will be seen, applies, in terms, only to the payment of pension money accruing after the last preceding semi-annual payment, and cannot therefore in any case exceed six months. The argument is, however, that from the general analogy of the two cases, the rule thus prescribed in the statute of 1832 should be held to apply to cases under the statute of 1836. But the acts of 1836 and 1837 have no such provision, nor any allusion to it. It might have been more conformable to the general course of legislation on this subject, thus to have provided in those acts ; but not having been so enacted, the former provision, bearing on a different state of things, cannot have any controlling influence in deciding whose was the property in the pension money due to the testatrix. The whole provision of the statute directly bearing on the question before us is that contained in the third section of the act of 1836, in these words : " If any person, who served in the war of the revolution, in the manner specified in the act passed June 7th

1832, have died, leaving a widow whose marriage took place oefore the expiration of the last period of his service, such widow shall be entitled to receive, during the time she may remain unmarried, the annuity or pension which might have been allowed to her husband by virtue of the act aforesaid, if liv'ng at the time it was passed."

By force of this act, the pension in such case is to enure tu the widow, and the right to receive any money due her on the same would seem to vest in her as a part of her estate, to the extent of the entire amount accruing on the same prior to her death ; certainly as to all that part falling due prior to the last semi-annual pay day.

It is then further objected, that by the act of 1836, § 4, it is provided " that any pledge, sale, assignment, or other transfer of any right, claim or interest in any money granted by this act, shall be utterly void and of no effect " ; and it is urged that this provision ought to defeat the right of the plaintiff to recover in this case. It seems to us, however, that this provision was solely intended to secure the pension for the personal benefit of the pensioners, and to place them beyond the reach of those who might improperly influence them to alienate the bounty of the government.

But the present plaintiff places his right to recover upon no title derived through any pledge, assignment, or transfer. If he has any legal claim, it is as the representative of the pensioner herself, and to reduce the same to possession as her estate Nor is there any suggestion, that a recovery here is sought for at the instance or for the benefit of the creditors of the pensioner It was assumed in the argument, and seems to be conceded, that the estate of the testatrix is a solvent estate, independent of any recovery in the present action ; and the only matter in controversy is, whether the pension money in question is to be collected and distributed as a part of her estate, or vests directly in her children, to the exclusion of the right of the executor to administer the same.

It is also further objected, that the money in controversy was paid over to the defendant under the order of the propei

officer representing the United States, and that considering the nature of the demand, and the source whence the money was received, it should not be here questioned but that it was properly received by the defendant, for his own use. If this were an attempt to bring in question an adjudication of the war department as to the person originally entitled to the pension, or, in other words, in whose favor the pension certificate ought to have issued originally, the objection would certainly have great weight, and would probably be decisive. But the case does not present the question in that aspect. It was held by the war department, and is conceded here by all parties, that the testatrix was the person originally entitled to the pension money. She had prop erly presented her claim to it, and furnished the necessary evidence to sustain her claim : All which is shown by the pension certificate. Under these circumstances, we think the right to receive the arrearages attached to her estate, and that the same was assets in the hands of her legal representative. The defendant received no pension certificate, nor was his name borne on the roll of pensioners. The money that he received was a portion of the pension money due to the testatrix ; and his only ground of demanding payment to himself was, that he was one of the four heirs at law of the testatrix. He must, therefore, have received the money under her original right, and must hold it subject to the proper claims of any other person who can establish a better title to it.

Suppose the money to have been received by some person who falsely claimed to have taken letters of administration upon the estate of Mrs. Foot, and upon whose application the pension department had ordered the money to be paid to him ; would it be any defence to an action by a lawful administrator against him to recover back the money, that he received it by orders of the pension department ? It is true that the case supposed is one of fraud in procuring the payment of the money, and therefore differs from the present case, where the payment appears to have been made with a knowledge of the real facts, and the only wrong done, if any, was that a party demanded the money who was not legally entitled thereto. I put the supposed case, merely

to illustrate the principle, and to show that cases may occur, where the court would look into the merits of the case, and ascertain the legal rights of the parties, and not be estopped from so doing merely because the pension department had directed the money to be paid to the party from whom it was sought to be recovered.

The application of a principle somewhat analogous may be found in various cases of payments made by the United States to claimants under the Spanish treaty, and also under the French treaty, making provision for damages sustained by our citizens, and for which the governments of Spain and France were responsible. After the money had been paid by the United States to the persons specified in the awards of the commissioners as entitled to recover the same, questions have arisen between those who received the money and third persons, as to the right to retain such money. Conflicting claims have been set up, founded on the allegation that the property, for which compensation had thus been made, was in fact in another person than the individual specified in the list of those to whom the money was awarded. And in such cases, the rule adopted has been, that the fact of receiving the money from the United States, by the party to whom it was ordered to be paid, was not conclusive in his favor, but that it was still open to the judicial tribunals to decide in whom in fact was the legal title in the property for which compensation had been awarded, and to whom the money rightfully belonged. *Comegys* v. *Vasse*, 1 Pet. 193. *Frevall* v *Bache*, 14 Pet. 95. *Lee* v. *Thorndike*, 2 Met. 313.

The court are of opinion that none of the objections urged by the defendant can avail him, or will entitle him to withhold the money demanded by the plaintiff in his capacity of executor of Mrs. Foot. *Defendant defaulted*

A motion was afterwards made in arrest of judgment, on the ground that the writ was not under the seal of this court, in which the action was commenced, but under the seal of the court of common pleas.

BY THE COURT. The motion, if otherwse well founded,

comes too late. The objection is merely formal, and affects the regularity of the process only. If a defect in form is relied on, the objection must be taken in due season, before expense is incurred. The defendant shall not take his chance on the merits, and upon failure there resort back to an early defect in the process, by which he was brought into court. This does not depend on the rule of positive law, that a plea in abatement must be made at the first term ; but upon the broad ground, that when a party pleads to the merits, he waives the exception and tacitly consents to abide the decision of the court upon that issue. *Ripley* v. *Warren,* 2 Pick. 592. *Carlisle* v. *Weston,* 21 Pick. 535. *Simonds v. Parker,* 1 Met. 508. *Carpenter* v. *Aldrich,* 3 Met. 58.