MERCANTILE MARINE INSURANCE COMPANY *vs.* WILLIAM W. CORCORAN.

Goods insured by a marine policy were seized by the government of Mexico in 1834, and abandoned to the underwriters, who accepted the abandonment, and paid the amount insured: In 1839 the United States entered into a convention with Mexico, providing for the appointment of commissioners to decide upon claims against Mexico, and in 1842 the commissioners appointed to carry this convention into effect made an award in favor of the original assured, who afterwards transferred to C. his interest in said award: In 1848 the United States, by treaty with Mexico, agreed to pay these claims; and in 1850 the commissioners on claims against Mexico under this treaty allowed to C as assignee of the assured, the amount so awarded, and in 1851 made an award in C.'s favor: The underwriters made no claim before either commission, and first gave notice to C after said allowance to him, that they claimed any interest in the property insured.

*Held*, that the abandonment to the underwriters and their acceptance thereof passed to them the property in the goods abandoned, with all the rights of the assured to compensation for the seizure by the Mexican government; but that, by reason of their laches in asserting their rights, they could not now maintain an action against C. as for money had and received to their use.

*It seems*, that the act of congress of 1849, *c.* 107, § 8, allowing any person, other than one in whose favor an award has been made by the commissioners under the treaty with Mexico of 1848, to proceed in equity in the circuit court of the United States for the District of Columbia to obtain the amount awarded or any part thereof, does not exclude other remedies of such claimant against the person in whose favor an award has been made.

ASSUMPSIT for money had and received, described in the specification of the plaintiffs' claim, as " cash received by the defendant from the United States to the use of the plaintiffs, under an award made by the commissioners appointed to adjust claims of American citizens against Mexico, for spoliations made by Mexico upon American property; which award was made to · the defendant as the supposed assignee of Joseph H. Lord and B. B. Williams, to the amount of $15,051, part of which was and is the money of the plaintiffs, to wit, the sum of $1,500." Writ dated May 26th 1851. The plaintiffs, in their specification of claim, gave notice that they would introduce evidence, that on the 25th of July 1833 they insured Lord, for himself and Williams, payable to Lord in case of loss, " $500 on property on board the ship Henry Thompson at and from Boston to Gibraltar, and at and from thence to port of discharge in the United States;" that the ship sailed on her intended voyage with said property on board; and that on the 5th of November 1833 the plaintiffs gave permission that the ship might " proceed from Gibraltar to port or ports of discharge or loading in the Gulf of Mexico, and thence to port of discharge in the United States:" That the property so insured was seized by the Mexican government on the 8th of February 1834, and was thereupon abandoned to the plaintiffs, who accepted the abandonment on the 27th of May 1836, and paid to Lord the amount insured, and thereby became the owners of said property, and of all rights resulting from such ownership: That the defendant, assuming to be in some way interested as the assignee of Lord and Williams, presented a claim to said commissioners

for the value of the property on board said ship and so seized and that the commissioners, on the 15th of April 1851, awarded to the defendant, as such supposed assignee, the sum of $15,051: And that the plaintiffs, as soon as they learned that the defendant claimed to have an interest in said property, to wit, on the 12th of January 1850, gave him notice of their claim.

The defendant pleaded the general issue; and filed a specification of defence, in which he gave notice that he should rely on the assignments hereinafter stated, and alleged that he was a *bona fide* purchaser for a valuable consideration, without notice of any interest of the plaintiffs in said property, and claimed to hold the money received by him to his own use.

The treaties and statutes of the United States, material to the understanding of this case, are the following: On the 11th of April 1839, the United States entered into a convention with the Republic of Mexico, providing for the appointment of commissioners to decide upon the claims of American citizens upon Mexico for injuries to their persons and property by the Mexican authorities, which claims, when ascertained, Mexico agreed to pay. 8 U. S. Sts. at Large, 526. And on the 30th of January 1843, the two governments entered into a convention " further to provide for the payment of awards in favor of claimants under the convention " of the 11th of April 1839. 8 U. S. Sts at Large, 578. By the thirteenth article of the treaty made between the United States and Mexico, at Guadalupe Hidalgo, on the 2d of February 1848, the United States engaged to assume and pay to the claimants the amounts of the claims already liquidated and decided against the Mexican Republic under these two conventions. 9 U. S. Sts. at Large, 933. And by the act of congress of 1849, *c.* 107, the United States made provision for ascertaining and paying these claims. 9 U. S. Sts. at Large, 393.

At the trial before *Bigelow*, J. there was evidence of the facts stated in the plaintiffs' specification of claim, and also of the following facts: The plaintiffs have received nothing from any source on account of the property abandoned to them by Lord. On the 25th of February 1842, the commissioners appointed

7*

under the act of congress of 1840, *c.* 34, entitled " an act to carry into effect a convention between the United States and the Mexican Republic," made an award in favor of Williams and Lord, for the property so seized, of $8,136, and interest from the 8th of February 1834, being the time of the seizure by the Mexican authorities. On the 11th of June 1845, Williams assigned one half of this award to Effingham H. Warner, who, on the 15th of August 1845, assigned the same to William B. Hart. On the 16th of October 1846, Williams assigned said award to Hart; and on the 23d day of the same month, Lord assigned to Hart all the interest which he then had or thereafter might have in said award. On the 18th of June 1847, Hart, in consideration of $4,000 to him paid by the defendant, assigned all his interest in the award to the defendant. All these assignments were duly filed in the office of the secretary of state of the United States. On the 9th of January 1850, the commissioners on claims against Mexico under the treaty of 1848 allowed to the defendant, as assignee of Williams and Lord, the said sum of $8,136, and interest thereon to the amount of $6,915 ; and on the 15th of April 1851, made an award in his favor of $15,051, which sum the defendant, on the 16th of May 1851, received from the treasury of the United States, less the sum of $8,887.50, which was detained under an injunction issued by the circuit court of the United States for the District of Columbia, at the suit of William Judson, claiming under an alleged prior assignment from Williams.

The defendant contended : 1. That the act of congress of 1849, *c.* 107, by which the subject matter of this controversy, namely, the fund to be distributed to the claimants, was created and called into being, prescribed the proceedings, and pointed out the tribunal, by which conflicting claims to the same portion of the fund were to be regulated ; * and that the plaintiffs

---

* The eighth section of this act is as follows : " In all cases arising under this act, where any person or persons, other than those in whose favor an award has been or may be made, shall claim the amount so awarded, or any part thereof, and shall within thirty days from the passage of this act, or from the date of the said award, notify the secretary of the treasury of his, her or their intention

were not authorized to resort to, and could not maintain an action in, any other tribunal. 2. That the defendant was a *bona fide* purchaser, for a valuable consideration, of the claim of Lord and Williams, without notice of the claim now set up by the plaintiffs, who by their laches had misled the defendant into the belief that Lord and Williams were the true owners of the claim, and had an unincumbered right to sell and assign the same; and that the plaintiffs should therefore be estopped to assert this claim.

The plaintiffs requested the judge to instruct the jury as follows : 1. That the abandonment by Lord to the plaintiffs of the property insured, and their acceptance thereof, before Lord made any transfer under which the defendant claimed, if proved to the satisfaction of the jury, passed the property and its proceeds to the plaintiffs, to the extent of the sum insured; and that the plaintiffs were entitled to recover that sum, and interest thereon from the time the abandonment took effect, to wit, the 8th of February 1834. 2. That the assignment from Lord to Hart did not purport to convey the property or its proceeds, but only such interest in the property as Lord then had; and that the defendant was not entitled, as against the plaintiffs, to any greater interest than such balance as might remain, after payment to the plaintiffs of said sum and interest. 3. That if the defendant purchased the title of Lord to the entire property and its proceeds, without notice or knowledge of the plaintiffs title, after such abandonment and acceptance, he was not entitled

to contest the payment of the same as awarded, and shall file with the district attorney of the United States a bond, with good and sufficient security, to be approved by him, for the payment of the costs and damages arising therefrom, the amount so awarded, and the payment of which is contested as aforesaid, shall be and remain in the treasury of the United States, subject to the decision of the courts of the United States thereon; and thereupon the said party so claiming the sum so awarded, or any part thereof, shall be at liberty to file his bill for relief and injunction in the circuit court of the District of Columbia, upon the principles which govern courts of equity ; and any injunction thereupon granted by the court shall be respected by the treasury department; and said case in equity shall thereupon be conducted and governed in all respects as in other cases in equity." 9 U. S. Sts. at Large, 394.

Mercantile Marine Insurance Company *v.* Corcoran.

to retain the money against the plaintiffs, to the extent of the sum insured and interest. 4. That if the defendant, when he purchased of Hart the supposed title of Lord, had knowledge of facts and circumstances, which in the opinion of the jury were sufficient to put a person of ordinary intelligence and acquaintance with business upon inquiry as to Lord's title, the plaintiffs were entitled to recover the sum insured and interest thereon as aforesaid.

There being no question of fact in dispute between the parties which the presiding judge deemed material, a verdict was taken by consent for the plaintiff, with the agreement that if, in the opinion of the court, the plaintiff could not hold it, it should be set aside, and a new trial granted, or such other judgment rendered as the court, upon the foregoing case, should think proper.

The arguments were had at November term 1853.

*C. B. Goodrich & T. K. Lothrop,* for the plaintiffs.

*C. P. Curtis & B. F. Hallett,* for the defendant.

DEWEY, J. The position taken by the counsel of the plaintiffs, that the abandonment by the party insured, and its acceptance by the insurers, passed the property, with the rights and interests resulting therefrom, to the plaintiffs, to the extent of the sum insured, is well maintained by the authorities cited. 2 Arn. Ins. 995. *Badger* v. *Ocean Ins. Co.* 23 Pick. 356.

It was also the legal right of the plaintiffs, under the abandonment, to have filed their claims for allowance with the commissioners appointed to hear and allow claims against the Mexican government. Nor does the fact of allowance to one person necessarily operate to bar the claim of another as for money held to his use, upon proof of an interest therein, and an equitable title to receive the same. Such cases are to be found in the decisions of this court; *Lee* v. *Thorndike,* 2 Met. 313 ; and of the supreme court of the United States. *Comegys* v. *Vasse,* 1 Pet. 193. *Frevall* v. *Bache,* 14 Pet. 95.

The plaintiffs, therefore, originally had a claim that might have been made available to them. The further inquiry is, whether they have lost the right to enforce this claim as against

the defendant by reason of their laches in not asserting the same at an earlier period, and in forbearing wholly to present the same before the board of commissioners. The case shows that the right of the plaintiff under the abandonment attached as early as 1836; and that they took no measures to assert any right or interest in this claim on the government of Mexico until 1850.

The plaintiffs also omitted to interpose their claim and cause the money allowed to the defendant to be retained for their benefit, by notifying the secretary of the treasury of their intention to contest the same, and instituting proceeding in the district court for the District of Columbia, as they might have done under the act of congress of 1849, *c.* 107, § 8. As to this remedy which was open to the plaintiffs, the court are inclined to the opinion that it is not exclusive of other remedies, and that the leading object of the provision was to enable the claimant to secure the retention of the money in the public treasury, and thus prevent its being passed over to the person to whom it was allowed, and who might be an irresponsible party.

The question in the present case resolves itself into this, whether the defendant is, under the circumstances disclosed, to be deprived of the fruits of his purchase of the claim of Lord and Williams, which have been realized solely by his vigilance in presenting and prosecuting the same before the commissioners. The plaintiffs have done nothing to secure any rights or interests they acquired under the abandonment. If the defendant had not, from his supposed exclusive interest in this demand, prosecuted this claim, and secured this award, the plaintiffs would have been just as remediless, as they will be if they now fail to recover the same of the defendants.

The facts in the case show great laches on the part of the plaintiffs, and such as might well have misled the defendant into the belief that Lord and Williams were the true owners of the claim, unincumbered by any such title as the plaintiffs now set up. They permitted Lord and Williams to present the claim as their own before the commissioners, and to have the

same reported as a demand of theirs against the government of Mexico. It was this claim, thus allowed, that the defendant purchased. After the United States, by treaty with Mexico, assumed the payment of these claims, a new board of commissioners was appointed, and public notice given of the sittings of this commission, to hear and report a list of those holding such claims, and the amount to be allowed thereon. The plaintiffs still forbore to assert any right as claimants, or to give any notice impeaching the claim of Lord and Williams as the real parties interested in the same. While the plaintiffs thus virtually abandoned their superior claim, the defendant, who was also an assignee of the claim of Lord and Williams, but junior in time, presented the claim to the commissioners, and obtained an allowance of the same in his favor as assignee. We think, under the circumstances, this allowance to the defendant is to enure to his benefit, though he was a junior assignee. Under this allowance the defendant recovered the money of the United States. The plaintiffs seek to appropriate the same to their own use. But in the opinion of the court they should not be permitted at this late day to reap the fruits of the vigilance of the junior assignee, acting under a *bonâ fide* assignment on his part, so far as we can perceive. See *Dearle* v. *Hall*, 3 Russell, 1; *Hulton* v. *Sandys*, Younge, 602; *Foster* v. *Cockerell*, 3 Cl. & Fin. 456, and 1 Myl. & K. 297; *Etty* v. *Bridges*, 2 Y. & Coll. Ch. 486. The result is, that the verdict which was taken *pro forma* for the plaintiff must be set aside and there must be                *Judgment for the defendant.*