# PORTER *v.* WHITE.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 221. Argued April 12, 1888. — Decided April 30, 1888.

In this case it was held, on the facts, that the plaintiff in a suit in equity had not established his right to a decree that he is entitled to the one-half of the attorney's fees in an award against Mexico by the joint United States and Mexican commission, which fees had been collected by the defendant.

The plaintiff failed to establish any equitable lien on the award, by showing a distinct appropriation of a part of it in his favor, or any agreement for his payment out of it.

IN EQUITY. Decree dismissing the bill. Complainant appealed. The case is stated in the opinion.

*Mr. S. S. Henkle* and *Mr. J. J. Johnson* for appellant. *Mr. William E. Earle* was with them on the brief.

*Mr. S. V. White,* appellee, in person.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a bill in equity, filed in the Supreme Court of the District of Columbia, by Richard H. Porter against Stephen V. White. The case arises as follows: On the 4th of July, 1868, a convention was concluded between the United States and Mexico, 15 Stat. 679, providing for the adjustment of the claims of citizens of either country against the other, under which all claims on the part of citizens of either country upon the other, arising from injuries to their persons or property by the authorities of the other, which might have been presented to either government for its interposition with the other, since the signature of the treaty of Guadalupe Hidalgo, of 1848, and which yet remained unsettled, as well as any other such claims which might be presented within the time specified in the convention, (but not covering any claim arising out of a transaction of a date prior to February 2, 1848,) were referred to two

commissioners, one to be appointed by each government, and the two commissioners to appoint an umpire to act in cases on which they might themselves differ in opinion. The decision on each claim was to be given in writing, and to designate whether any sum which might be allowed should be payable in gold or in the currency of the United States. It was provided in the convention that each government engaged "to consider the decision of the commissioners conjointly, or of the umpire, as the case may be, as absolutely final and conclusive upon each claim decided upon by them or him, respectively, and to give full effect to such decisions without any objection, evasion, or delay whatsoever." It was further provided, that the total amount awarded in all the cases decided in favor of the citizens of one government should be deducted from the total amount awarded to the citizens of the other, and the balance, to the amount of $300,000, should be paid at the city of Mexico or at the city of Washington, in gold or its equivalent, within twelve months from the close of the commission, to the government in favor of whose citizens the greater amount might have been awarded, without interest or any other deduction than that specified in Article 6 of the convention; and that the residue of such balance should be paid in annual instalments, to an amount not exceeding $300,000, in gold or its equivalent, in any one year, until the whole should have been paid. Article 6 provided for the compensation of the commissioners, the umpire, and the secretaries, and provided that the whole expenses of the commission, including contingent expenses, should be defrayed by a ratable deduction on the amount of the sums awarded by the commission, provided that such deduction should not exceed 5 per cent on the sums so awarded, and that the deficiency, if any, should be defrayed in moieties by the two governments. By successive conventions, 17 Stat. 861; 18 Stat. 760, and 18 Stat. 833, the duration of the commission, which had been originally limited to two years and six months from the day of the first meeting of the commissioners, was extended until the 31st of January, 1876; and, by a convention concluded April 29, 1876, 19 Stat. 642, the time for decision by the umpire was extended until the 20th of November, 1876.

By an act of Congress passed June 18, 1878, c. 262, 20 Stat. 144, entitled "An act to provide for the distribution of the awards made under the convention between the United States of America and the Republic of Mexico, concluded on the fourth day of July, eighteen hundred and sixty-eight," it was provided (§ 1) as follows: "That the Secretary of State be, and he is hereby, authorized and required to receive any and all moneys which may be paid by the Mexican Republic under and in pursuance of the conventions between the United States and the Mexican Republic for the adjustment of claims, concluded July fourth, eighteen hundred and sixty-eight, and April twenty-ninth, eighteen hundred and seventy-six; and whenever, and as often as, any instalments shall have been paid by the Mexican Republic on account of said awards, to distribute the moneys so received in ratable proportions among the corporations, companies, or private individuals respectively in whose favor awards have been made by said commissioners, or by the umpires, or to their legal representatives or assigns, except as in this act otherwise limited or provided, according to the proportion which their respective awards shall bear to the whole amount of such moneys then held by him, and to pay the same, without other charge or deduction than is hereinafter provided, to the parties respectively entitled thereto. And in making such distribution and payment, due regard shall be had to the value at the time of such distribution of the respective currencies in which the said awards are made payable; and the proportionate amount of any award of which by its terms the United States is entitled to retain a part shall be deducted from the payment to be made on such award, and shall be paid into the Treasury of the United States as a part of the unappropriated money in the Treasury." Sections 3 and 4 of the same act provided as follows: "Sec. 3. That out of the payments and instalments received from Mexico, as aforesaid, on account of said awards, and out of the moneys which shall be received by the Secretary of State under the provisions of this act, the Secretary of State shall, when and as the same shall be received and paid, and before any payment to claimants, deduct therefrom and retain

a sum not to exceed five per centum of said moneys awarded, to citizens of the United States, until the aggregate of the amounts so deducted and retained shall equal the sum of one hundred and fourteen thousand nine hundred and forty-eight dollars and seventy-four cents, being the amount of the expenses of the commission, including contingent expenses paid by the United States in accordance with article six of the treaty, as ascertained and determined in pursuance of the provisions of the said treaty; which said sums, when and as the same are deducted and retained, shall be, by the Secretary of State, transmitted to the Secretary of the Treasury, and passed to the account of, and be regarded as, unappropriated money in the Treasury. . Sec. 4. That in the payment of money, in virtue of this act, to any corporation, company, or private individual, the Secretary of State shall first deduct and retain or make reservation of such sums of money, if any, as may be due to the United States from any corporation, company, or private individual in whose favor awards shall have been made under the said convention."

Among the awards made by the commission was one to the legal representatives of Austin M. Standish, of $42,486.30; one to the legal representatives of Monroe M. Parsons, of $50,828.76; and one to the legal representatives of Aaron A. Conrow, of $50,497.26; those three persons having been citizens of the United States who were unlawfully killed in Mexico, in 1865, by the Mexican authorities. The awards were made in 1874 or 1875. The bill avers that, in 1869 or 1870, the plaintiff was authorized by powers of attorney from the legal representatives of Standish, Parsons, and Conrow to prosecute their claims for such unlawful killing, before the commission; that the powers of attorney to the plaintiff stipulated that he should be entitled, as compensation for his services and expenses in the prosecution of the claims, to one-half of whatever sums might be awarded by the commission to such legal representatives; that he prosecuted the cases with success, and paid or assumed to pay all the necessary expenses thereof; that, by virtue of his contract, he became entitled to the one-half of the sums awarded, and the

legal representatives of the parties recognized his right to such moieties, and respectively claimed for themselves only the one-half of the awards; that there was, at the time of the filing of the bill, in December, 1880, in the custody of the Secretary of State of the United States, something over $20,000 applicable to the moieties of the plaintiff upon the three awards, and the Secretary was ready and willing to pay the same whenever it should be determined who was entitled thereto; that the plaintiff had, in 1876, borrowed from the defendant $5000, and given him, as security, a lien upon the moiety of the plaintiff in the Parsons award, and a power of attorney to collect such moiety; that, in 1877, he borrowed from the defendant $2500 more, and executed to him an absolute assignment of the plaintiff's moiety of the Standish award, with the agreement that, although such assignment was absolute in form, it was to be simply a security for the money borrowed, and for services to be performed by the defendant in collecting the moieties for the plaintiff; that the Secretary of State had refused to pay the plaintiff his interest in the awards until the rights of certain parties, who had filed claims with the Secretary upon the plaintiff's interest in the fund, should be settled; that the defendant represented to the plaintiff that he (the defendant) could procure the payment of his interest in the awards, if the plaintiff would authorize him to do so, and that, believing such representation, he gave to the defendant "power of attorney to collect not only the Standish and Parsons cases, which had been assigned to him, but gave him also the said Conrow case, in which the defendant had no interest whatever;" that the defendant was now claiming that he was the absolute owner of the two moieties in the cases of Parsons and Standish, while his only real claim upon the same was on account of his loan of the $7500; that the defendant also refused to recognize the right of the plaintiff to the moiety of the Conrow claim, falsely alleging that he had purchased the plaintiff's interest therein from one Richard H. Musser, who set up a false claim to the one-half of the plaintiff's moiety of the Conrow claim; that the Secretary had decided that none of the claimants had any lien upon the

fund except the plaintiff and the defendant, and was ready and willing to pay the amount which was in his control, applicable to the three moieties, upon the joint receipt of the plaintiff and the defendant; and that, inasmuch as the defendant held absolute assignments for the Parsons and Standish cases, the Secretary would not undertake to decide the rights between the plaintiff and the defendant, but left them to settle their controversy by adjustment, or by the determination of a court of competent jurisdiction.

The bill waives an answer on oath, and prays for a decree that the defendant holds the assignment of the plaintiff's moieties in the cases of Standish and Parsons as security for the plaintiff's indebtedness to him for money borrowed, and for no other purpose and in no other right; that he may be ordered to cancel the moieties or reassign them to the plaintiff, upon the payment to him by the plaintiff of the amount of money, with interest, which the court may find that the plaintiff owes to him; and that he may be decreed to empower the plaintiff to collect from the Secretary the amount of the instalments in his hands, applicable to all three of the cases. The bill also prays for such other and further relief as may be necessary.

A demurrer to the bill was overruled, and the defendant put in an answer. The substance of the answer is that, in 1869 or 1870 the legal representatives or next of kin of the three persons referred to made written executory contracts with Musser, whereby he undertook to furnish the necessary money and do the necessary legal work to establish the claims, and the claimants undertook, on such services and money being furnished, to pay him a fee which should equal the moiety of any award in the premises, in each case; that, in pursuance of such contracts, the claimants executed powers of attorney, whereby Musser was constituted attorney in fact, irrevocable, with a statement that the power of attorney was coupled with an interest; that, about that time, there was a verbal contract made between Musser and the plaintiff, whereby it was agreed that the plaintiff should furnish the money and Musser should do the legal work, and the two should divide the fees of Musser under the contract; that the plaintiff failed to furnish the

money to carry on the suits, and undertook to dismiss Musser from the cases, leaving Musser with the responsibility of furnishing money and doing the legal work; that, in the discharge of his duties under his agreements with the claimants, Musser retained the legal firm of Pike & Johnson, and the claimants agreed in writing that that firm should receive 25 per cent of the resulting awards, to be taken from Musser's moiety; that, on the making of the awards, the several claimants executed assignments to Musser and Pike & Johnson, for a moiety of each of the awards; and that, on the 12th of February, 1879, Musser and Pike & Johnson, for the consideration of $30,000, sold and assigned such moiety to the defendant in his own right. There are other allegations in the answer, which it is unnecessary to set forth, in the view we take of the case.

A replication was put in to the answer, and proofs were taken on both sides. The court, in special term, in February, 1883, made a decree as follows: "The court finds that the plaintiff is entitled to the one full, equal half of the attorney's fees in the awards against Mexico by the joint United States and Mexican commission in the case of Mary Ann Conrow, referred to in the bill and proceedings in this case, and the defendant is entitled to the other half. It appearing to the court that the defendant White has been recognized by the State Department as entitled to the whole of the said attorney's fees in said award, and that he has already been paid by the State Department, from the instalments heretofore paid by Mexico upon said award, the following sums, at the times following, to wit: on the 5th day of May, 1881, $8896.81; on the 11th day of April, 1882, $1806.06; and that there is now on hand in the State Department the sum of $1806.06, applicable to said attorney's fee in said Conrow case, and that there are seven more annual instalments to be paid by Mexico upon said award, it is, this 27th day of February, 1883, ordered, adjudged, and decreed, that the said defendant do, within five days from this date, pay to the solicitors of said complainant Porter the one-half the said sums by him heretofore received upon said awards, with interest thereon

at the rate of six per cent per annum from the times of pay-
ment to him as aforesaid, to wit, $4448.41, with interest from
the fifth day of May, 1881, and $903.03, with interest thereon
from the 11th day of April, 1882; that said defendant assign
and transfer to the plaintiff, by such form of conveyance as
will be recognized by the State Department, the one equal
half of the payments yet to be made by Mexico upon said
award applicable to attorney's fee, including the amount now
in said Department applicable to said purpose, and that the
defendant pay the costs of this suit within ten days, or that
in default thereof, as well as in default of the payment of the
amount found due to the said Porter, execution do issue there-
for, as upon judgment at law."

This decree was a decision in favor of the plaintiff in regard
to the Conrow award only. It did not grant the relief prayed
by the bill in respect to the Parsons and Standish awards, and
decreed nothing in favor of the plaintiff in regard to those
awards. There is nothing in the record to show that either
party appealed to the general term of the court; but there
appears in the record a decree of the court in general term,
made December 24, 1883, which reads as follows: "This cause
came on to be heard at this term, and was argued by coun-
sel; and thereupon, on this 24th day of December, A.D. 1883,
upon consideration thereof, it is found by the court, that the
equities thereof are with the defendant, and that the respec-
tive awards of S. Kearney Parsons against Mexico and Mil-
dred Standish against Mexico were not assigned and delivered
by the plaintiff to the defendant as security for the return of
money, and that the plaintiff is not the assignee of any por-
tion of the award of Mary Ann Conrow against Mexico, but
that the defendant, Stephen V. White, is the assignee in his
own right of a moiety of each of the said three awards;
wherefore it is ordered, adjudged, and decreed by the court,
that the judgment and decree heretofore entered in favor of
plaintiff against the defendant on February 27, 1883, in the
special term, be, and the same is hereby, vacated, annulled,
and held for naught, and the bill herein is dismissed, and that
the defendant, Stephen V. White, do have and recover of the

plaintiff, Richard H. Porter, his costs herein expended, taxed at $—, and that he have execution therefor as in a suit of law, and to said order the plaintiff prays an appeal to the Supreme Court of the United States, which is allowed."

Although the plaintiff has appealed from the whole of the decree of the court in general term, it is stated in the brief of his counsel that he did not appeal from the decree of the court in special term, and is therefore concluded by the failure of that decree to award relief to him in respect to the Parsons and Standish claims; and that the dispute in this court is limited to his right to one-half of the fees in the Conrow case. Therefore, although the decree of the court in general term finds that the awards in favor of the Parsons and Standish claims were not assigned and delivered by the plaintiff to the defendant as security for the return of money, and although that decree further finds that the defendant is the assignee in his own right of a moiety of each of those two awards as well as of a moiety of the Conrow award, and although the plaintiff appeals generally from that decree, no question arises in this court as to any claim of the plaintiff to any share of the Parsons and Standish awards, but the only portion of the decree of the court in general term drawn in question is that which declares that the plaintiff is not the assignee of any portion of the Conrow award, but that the defendant is the assignee in his own right of a moiety of that award.

The claim of Porter in respect to the Conrow award is based upon the contention that he procured Musser to obtain, for a compensation to be paid to him by the plaintiff, powers of attorney from the legal representatives of the three men who had been killed, to prosecute the claims, the powers of attorney and contracts to contain the plaintiff's name as attorney in fact, with a power of substitution; that Musser procured the powers of attorney, and contracts in writing, in each of the cases, for one-half of the recovery as a fee, but procured the name of Musser to be inserted as attorney, instead of that of the plaintiff; that, on the plaintiff's complaint of this, Musser substituted the plaintiff as attorney in each of the three cases, by an indorsement on the power of attorney itself;

that the legal effect of those substitutions was to make the plaintiff the attorney in all three of the cases, instead of Musser; that, under these substitutions, the plaintiff employed attorneys in Washington, who with him prosecuted the cases to success, Musser aiding in taking testimony; that the plaintiff paid Musser in full for all his services; that Musser had no interest in the fees secured under the contracts with the claimants; and that Musser disputed this, and, in 1872, employed the firm of Pike & Johnson, after the evidence in the cases had been closed, and the printed arguments had been filed, and the cases were awaiting a hearing.

It is further urged, on the part of the plaintiff, that it is admitted in the answer of the defendant that there was a verbal contract between Musser and the plaintiff that the plaintiff should furnish the money and Musser should do the legal work, and that the two should divide the fees of Musser under the contract with the claimants; and much stress is laid upon the decision of this court in *Peugh* v. *Porter*, 112 U. S. 737, made January 5, 1885, after the decree of the court in general term in this suit, in which it is said that the agreement between Musser and Porter was "that each should have an equal interest in the prosecution and proceeds of the claims in case of recovery;" and upon the fact that White was a party to that suit.

But there is no evidence in the case that Porter had any assignment in writing of any interest in the Conrow award, or any written instrument creating any lien upon it, or its proceeds, by way of fee or otherwise, from either the claimants of that award or from Musser. The power of attorney from the widow of Conrow to Musser, dated December 10, 1869, contains no assignment of any specific interest in the claim, and the substitution of Porter by Musser, indorsed on such power of attorney, and dated July 4, 1870, only states that "Richard H. Porter is substituted and authorized to act under the powers hereinabove given."

Under these views, the plaintiff has failed to establish any equitable lien on the Conrow fund, by showing any distinct appropriation of a part of that fund in his favor by the widow

of Conrow, either directly or indirectly, or any agreement, direct or indirect, that the plaintiff should be paid out of that fund. *Wright* v. *Ellison*, 1 Wall. 16; *Trist* v. *Child*, 21 Wall. 441, 447; *Peugh* v. *Porter*, 112 U. S. 737, 742. On the contrary, the evidence shows that the widow of Conrow, recognizing her agreement with Musser that he should have as compensation one-half of the money which should be awarded to her on the claim, executed, on the 28th of March, 1872, a written power of attorney to the firm of Pike & Johnson, to prosecute her claim, which power revoked all prior powers executed by her in that behalf, a like power being executed at the same time by the son of the deceased Conrow; that Mrs. Conrow at that time agreed with Musser and the firm of Pike & Johnson that that firm and Musser should have, between them, as compensation, the one-half of whatever should be awarded to her on the claim; that, on the 19th of December, 1878, she made a written request to the Secretary of State to pay one-half of the award to herself, one-fourth of it to Musser, and one-fourth of it to the firm of Pike & Johnson; and that, on the 12th of February, 1879, Musser and the firm of Pike & Johnson, by a written instrument executed by them, assigned to the defendant all their interest in the Conrow claim, the award on that claim having been made to Mrs. Conrow.

It is very clear that the plaintiff has no title to any relief against the defendant, whatever he may have against Musser, who is not a party to this suit. There is nothing in the case of *Peugh* v. *Porter* which can affect the claim of the plaintiff against the defendant.

*The decree of the court below in general term is affirmed.*