[Civ. No. 9812. First Appellate District, Division Two.—August 12, 1935.]

C. M. WOLLENBERG, as Administrator, etc., Plaintiff and Respondent, v. PAULINE E. TONNINGSEN et al., Executors, etc., Defendants and Respondents; CHARLES BONE, Appellant.

William H. Bryan for Appellant.

John L. McNab and Ernest K. Little for Respondents.

NOURSE, P. J.—Plaintiff sued for a declaratory judgment "together with such relief as may be requisite or proper".

The defendant Tonningsen's answer admitted the allegations of the complaint and his interests are identical with those of the plaintiff. A demurrer of the Golden Gate Land Association was sustained and the cause was dismissed as to that defendant. The defendant Bone answered and from the judgment adverse to him prosecutes this appeal. After the litigation was started the original plaintiff, Mrs. Leviston, and the defendant John Tonningsen both died and substitutions have been made for them.

In the year 1904 the Golden Gate Land Association was incorporated for the purpose of conducting a cemetery on the outskirts of San Francisco. The incorporators were Maurice Siminoff and Charles L. Patton. Later John Tonningsen came into the corporation and some time prior to the earthquake and fire of 1906 a trust agreement was executed by Siminoff, Patton, Tonningsen, Bone and one E. W. Brown whereby a large part of the stock was to be held by Patton as trustee. In accordance with this agreement a portion of the stock owned by Tonningsen and a portion of that owned by Patton was transferred on the books of the company to the name of Bone and in August, 1921, an agreement was executed by Bone, Tonningsen and Patton whereby they recognized the former trust agreement and stipulated that all the stock standing in the name of Bone should continue to be held by Patton under the former trust agreement as trustee with full power to transfer and sell the same. They also stipulated in this agreement that all of the stock in whosesoever name it stood should belong one-third thereof to each of the following persons: Tonningsen, Patton and Emma Ungar, the successor in interest to Siminoff.

The complaint alleged the execution of this agreement and that prior thereto 72,500 shares of the stock owned by Tonningsen and 59,640 shares belonging to Patton had been put in the name of Bone; that though the agreement of August 22, 1921, was not executed by Emma Ungar all her interest in the stock was acquired by Tonningsen by purchase and that he and Patton were the sole beneficiaries under the agreement. It was then alleged that Patton died in 1923 and that plaintiff, as his executrix, agreed with Tonningsen, as the sole beneficiaries of the trust, to designate and appoint Tonningsen as trustee thereof. The controversy is alleged to have arisen through the claim of defendant Bone that in the year 1907 the

stock referred to was placed in his name as the result of a conspiracy between Patton, Tonningsen and Bone whereby Patton and Tonningsen hoped to escape stockholders' liability for debts of the corporation and that the defendant Bone, by reason of this intended fraud to which he claims to have been a party, claims that the other conspirators have thereby forfeited to him all their interest in the stock though the said defendant recognized the claims of Patton and Bone and acknowledged the trust relation from the time of the transfer in 1907 until the fourth day of June, 1931. The plaintiff alleged that she disputed and denied all these contentions made by the defendant Bone and asked for a declaration of the rights and duties of the respective parties with respect to the agreement of August 22, 1921, and also ''with respect to said shares of the capital stock of said corporation, together with such relief as may be requisite or proper''.

The trial court found in accordance with all the allegations of the complaint and in addition thereto found that it was untrue that the stock was transferred to Bone in fraud to escape stockholders' liability or otherwise; that such transfer did not enable any of the parties to escape stockholders' liability and no claim was ever made against the stockholders based upon such liability and that no creditor of the corporation was ever defrauded or injured by such transfer. The court further found that the defendant Bone had no right, title or interest or any claim upon the stock in litigation and expressly ratified and confirmed the appointment of Tonningsen as substituted trustee.

Appellant first argues that the complaint fails to state a cause of action because the writing of August 22, 1921, was not a valid contract and because there was no controversy under this writing. The point is that since the writing was not signed by all the parties to be bound by it no valid contract was made and that in the absence of a valid contract no real controversy could arise to give the court jurisdiction to grant declaratory relief. The point would have presented a question of debatable interest if the appellant had stood upon his demurrer, but having answered and gone to trial and the evidence having disclosed the manifest equities incorporated in the judgment the question of the sufficiency of the complaint becomes academic. This is particularly so in view of the rule stated in *Zellner* v. *Wassman,* 184 Cal. 80,

88 [193 Pac. 84], that: "It is not essential that a complaint state a cause of action for the relief which plaintiff seeks, provided the facts stated show some right of recovery, and a party cannot be thrown out of court merely because he may have misconceived the form of relief to which he is entitled." (*Brown* v. *Anderson-Cottonwood Irr. Dist.,* 183 Cal. 186, 188 [190 Pac. 797]; *Martin* v. *Hall,* 219 Cal. 334, 339 [26 Pac. (2d) 288].)

■ Appellant assumes that the jurisdiction to entertain a proceeding for declaratory relief depends upon the existence of a controversy with respect to some written instrument. Provision for such proceeding is found in sections 1060 to 1062a of the Code of Civil Procedure. Section 1060 reads: "Any person interested under a deed, will or other written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over or upon property, . . . may, in cases of actual controversy relating to the legal rights . . . bring an action in the superior court for a declaration of his rights and duties in the premises. . . . " The use of the word "or" following the word "contract" definitely expressed the purpose to authorize such an action by one who desires a declaration of his rights or duties with respect to another or in respect to property. Hence, though the plaintiff pleaded the agreement of 1921 and asked for a declaration of her rights in respect to it, she also pleaded the facts which disclosed a controversy over the rights and duties of the parties with respect to the stock of the corporation. It cannot be said that the complaint failed to plead a controversy when it alleged facts showing that some of the parties claim title to the property under either an oral or written trust and the other claims under a fraudulent transfer. Hence we may assume that the writing did not become a binding contract and also that the plaintiff has not pleaded a controversy based upon a written instrument, but nevertheless, having pleaded facts which would entitle her to equitable relief, the complaint stated a cause of action and fully supports the decree entered.

■ The third point raised by the appellant is that the action for declaratory relief will not lie when there is an available remedy in an ordinary action at law or in equity. The answer is that the code does not so limit that right of action. Appellant cites *Stenzel* v. *Kronick,* 102 Cal. App. 507

[283 Pac. 93], and *Hamburger & Sons* v. *Kice,* 129 Cal. App. 68 [18 Pac. (2d) 115], in support of his argument. Neither case is in point. Both applied the provisions of section 1061 of the Code of Civil Procedure which gave the court discretion to refuse to exercise the power where it is not necessary or proper under the circumstances.

Appellant next argues that the complaint is defective because the trustee and not the plaintiff is the proper party to begin the action and because another party mentioned in the original trust agreement was not joined as a defendant. Without discussing the ancient rules relating to trusteeships, it is sufficient to say that the code section authorizes the maintenance of an action for declaratory relief by "any person interested". As to the nonjoinder of defendants the evidence showed without the slightest conflict that they had no interest, beneficial or otherwise, in the subject-matter of the litigation and also that the failure to join them did not in any way prejudice the interests of the appellant herein. All the stock originally held by Siminoff passed to Patton, Tonningsen and Emma Ungar and all that coming to the latter passed to Tonningsen. The stock originally set aside for Brown to use in building up the good will of undertakers was never delivered to him and so far as it appears from this record he has made no claim to it over a period of twenty-five years.

The appellant attacks that portion of the decree which adopts and approves the appointment of Tonningsen as substituted trustee of the stock owned by Tonningsen and the Patton estate. At the time of the trial it appeared that Tonningsen and the Patton estate were the sole beneficiaries under this trust. The executrix of the Patton estate did not desire to act as trustee and joined with Tonningsen in naming him for that purpose. The decree declares that this appointment is "ratified, approved, *made,* adopted and confirmed". This order finds full warrant in *Sacramento Bank* v. *Murphy,* 158 Cal. 390, 393 [115 Pac. 232].

Finally, it is argued that the judgment should be reversed because of the finding that the transfers to Bone in 1907 were not in fraud of the creditors of Patton and Tonningsen. It is not contended that this finding is not supported by the evidence and such contention could not be made in face of the record. With a mass of oral and documentary evidence completely disproving appellant's claim that he acquired title

through a conspiracy to defraud the creditors of the corporation and with the showing that he had testified directly to the contrary in another proceeding involving the same stock, the trial court had no difficulty in finding that his testimony in this case was untrue. But it is argued that the question is foreclosed by a statement in the opinion of the Supreme Court in *Leviston* v. *Tonningsen,* 212 Cal. 656, 659 [299 Pac. 724], to the effect that this stock had been transferred to Bone in order to evade the stockholders' liability. Respondent correctly points out that the purpose of the transfer of the stock was not in issue in the former case and that it was based solely on Tonningsen's testimony to the effect that Bone had told him that such was Patton's purpose. If the purpose of the transfer had been in issue in the former case it could not have been determined upon such testimony. On the other hand, the vital issue in the former case was the ownership of these particular shares of stock and upon that issue the court found that Patton and Tonningsen were the owners.

The appellant has had his full day in court and nothing occurring at the trial has prejudiced his rights in the least. He came into court on an unconscionable claim but nevertheless was given every possible consideration in the presentation of his case. The record is singularly free from error and the judgment is based upon sound legal and equitable principles.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 11, 1935, and the following opinion then rendered thereon:

THE COURT.—On his petition for a rehearing the appellant criticizes that portion of the opinion treating his plea that the transfer of the corporate shares was made in fraud of creditors. He fails to distinguish between a case of fraud and a case of transfer in trust to escape future liability. Such a transfer may be made in good faith and without fraud. But if fraud is the issue it must be alleged and proved, not presumed or inferred from proof of the transfer alone.

In *Leviston* v. *Tonningsen,* reported in 212 Cal., page 656 [299 Pac. 724], the trial court found that the transfer of the shares by Patton and Tonningsen to Bone "was a transfer

made whereby the beneficial ownership of said shares still remained in said Patton and Tonningsen, and said Bone received said shares simply to hold the same in trust for said Tonningsen and said Patton''. Also that ''the purpose and object sought to be accomplished by said Patton and Tonningsen in transferring said shares was to avoid liability as stockholders in said corporation, which liability became a matter of apprehension''.

The Supreme Court expressly affirmed the finding as to the beneficial ownership of the shares, and also stated that the transfer was made ''in order to *evade* stockholders' liability''. The finding followed the pleading of the amended complaint in intervention. There was no issue, finding, or proof that it was made to ''defraud'' creditors, or that any creditor was defrauded or hindered in any degree.

There is a wide difference between a transfer of property to avoid future liability and a transfer made to defraud creditors. It is when a fraud has been accomplished that the courts will deny relief to the transferor. Here the trial court found that the transfer did not operate to escape stockholders' liability ''for either the existing or future debts of the corporation; that no claim was ever made against the stockholders of said corporation for stockholders' liability and no creditor of said corporation was ever defrauded or injured by said transfers''.

It is a simple proposition of law that the transfer would not relieve either Patton or Tonningsen from liability accruing while they were stockholders. Bone was a man of means and the transfer to him did not defeat the rights of creditors of the corporation. But it seems necessary to emphasize that the issue here is not the ''intent'' of the transfer, but the issue is one of fraud. No evidence of fraud was offered, while the evidence supporting the finding above noted has no conflict.

The petition for a rehearing is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 10, 1935.