[Civ. No. 16710. Second Dist., Div. Three. June 21, 1949.]

FRANK R. LUCKHARDT, as Executor, etc., Respondent, v. GWENDOLYN LUCERO MOORADIAN, as Administratrix, etc., Appellant.

John L. Mace for Appellant.

Wallace, Cashin & Arrington and W. W. Wallace for Respondent.

VALLÉE, J.—Appellant here, defendant below, appeals from a judgment adjudging respondent to be the owner of an award made by the American Mexican Claims Commission for Lots B and K in Rancho Tijuana, Baja California, Mexico, to "The heirs of Jose Francisco Arguello as their interests may appear." The American Mexican Claims Commission was created by an Act of Congress (Settlement of Mexican Claims Act of 1942) pursuant to treaties between the United States and Mexico, to hear and render final decisions on claims of American nationals against the government of Mexico for loss of, and damage to, property located in Mexico. (56 Stats. 1058, 59 Stats. 50, 22 U.S.C.A. § 661 et seq.)

Jose Francisco Arguello, also known as Francisco Arguello, died intestate in the county of Los Angeles, August 6, 1880. His estate was duly administered and a decree of distribution entered August 23, 1881. In 1946, the estate was reopened on petition of one of his 12 children, Concepcion Arguello Lucero, who alleged after-discovered property, consisting of a claim against the government of Mexico for the expropriation of lands belonging to her intestate. She was appointed special administratrix. Later she resigned and appellant, Concepcion's daughter, was appointed administratrix. Pilar Arguello de Luckhardt, respondent's decedent, was one of the children of Jose Francisco Arguello. Pilar died testate in the county of Los Angeles, June 15, 1900. Respondent Frank R. Luckhardt, her son, was appointed executor of her estate. Administration of the estate is still pending.

Santiago Arguello, in 1829, received a grant of a large tract of land in Mexico, known as "Rancho Tijuana," sometimes called "Tia Juana," situate in Baja California, Mexico. Santiago married Marie Pilar Ortega. Nine children were born to them, one of whom was Jose Francisco Arguello. Jose

married Tomasa Lugo and among the 12 children of this union were Pilar and Concepcion, two daughters. Santiago Arguello died November 9, 1862. In 1864, Pilar Arguello married Caesar Luckhardt. On March 7, 1870, Jose and his wife Tomasa conveyed to Caesar Luckhardt, their son-in-law, in consideration of $2,000, all of their "right, share, claim, demand, interest, and inheritance whatsoever" in Rancho Tijuana. The deed was recorded in Ensenada, Mexico. Caesar Luckhardt in turn on July 1, 1870, conveyed all the rights he had received under the latter deed to his wife Pilar Arguello de Luckhardt, daughter of Jose and Tomasa. This deed was likewise recorded.

Marie Pilar Arguello (widow of Santiago) died in 1878. After her death, litigation concerning the Rancho ensued among the heirs. On January 30, 1889, to settle the litigation, the nine children of Santiago and Marie Pilar Arguello, individually and by their representatives or successors, including Pilar Arguello de Luckhardt, represented by "lawyer Ramirez," as purchaser of her father's interest, made an agreement dividing the Rancho. This agreement, approved July 6, 1889, by decree of court of Baja California, settled the rights which all the children had in the property. as a result either of inheritance or conveyance. What was known as the northern part of the Rancho was set aside for the descendants of five of the children, one of whom was designated as "the Zamorano interest," the other four being the heirs of Jose Antonio Arguello, Jose Francisco Arguello, Ramon Arguello and Santiago Emidio. The decree approving the agreement stated that formal possession of the northern portion of the ranch and of the "Oriental portion" of the town was given to and accepted by the five interests, including "Ricardo Ramirez for the senora PILAR ARGUELLO DE LUCKHARDT," and "the lawyer Ramirez adding that the possession that he receives in the name of the senora Luckhardt is for the purchase of the heritage right of her father Don Jose Francisco Arguello."

In 1890, these five named interests entered into two partition agreements. One of these agreements divided the townsite into blocks. Pilar Arguello de Luckhardt was the only heir of Jose Francisco Arguello, a party to this agreement. The other divided the acreage into tracts described by letters. It was agreed that Lots B and K were owned by Jose Francisco Arguello. It contained this provision: "We also explain that the name of Jose Francisco Arguello which appears in

the transaction is the common name of the heirs, recognized by this court at the session of October 12, 1888: Francisco Arguello Jose having died, and his rights are represented by the heirs who are represented by Ramon Arguello.'' Pilar Arguello de Luckhardt was the only heir of Jose recognized by the court and by the parties ''at the session of October 12, 1888,'' which was the ''day set aside for the declaration of heirs.'' The decree at that hearing provided that Pilar Arguello de Luckhardt ''shall have the same rights and portions as the others.'' The word ''others'' referred to the children of Santiago Arguello who were then living and children of deceased children. Jose Francisco Arguello had been deceased for almost 10 years and the only one of his 12 children listed was Pilar Arguello de Luckhardt. In other words, Pilar Arguello de Luckhardt, as purchaser of her father's interest, stood in the place of her father Jose Francisco Arguello. It appears from the agreement of January 30, 1889, that the ''rights and portions'' referred to in the quoted provision were vested in Pilar Arguello de Luckhardt. All of the agreements were approved by decree of the Judicial District of Ensenada, Northern Territory of Baja California, Mexico.

In 1929, the Republic of Mexico nullified the original grant to Santiago Arguello. In 1938, the nullification was declared void by the Supreme Court of Mexico which declared that title was in the Arguello family and those deriving title through them.

The Settlement of Mexican Claims Act of 1942 as amended in 1945 (56 Stats. 1058, 59 Stats. 50, 22 U.S.C.A. § 661 et seq.), adopted pursuant to treaties between the United States and Mexico, established the American Mexican Claims Commission and authorized it ''to examine and render final decisions'' in specified categories of claims on behalf of American nationals against Mexico. One of the categories of claims was that which arose between January 1, 1927, and October 6, 1940, ''as a consequence of damage to, or loss or destruction of, or wrongful interference with, property of American nationals,'' with exceptions not pertinent here. The act provided that all decisions by the commission with respect to claims ''shall be based upon such evidence and written legal contentions as may be presented . . ., and upon the results of such independent investigation with respect to such claims as the Commission may deem it advisable to make.'' It provided that the reasons for the decisions should be stated and that each decision ''shall

constitute a full and final disposition of the case in which the decision is rendered." In any case in which an award was entered the commission was required to certify such award to the Secretary of the Treasury. The act also provided that payments of awards should be made "in accordance with such regulations as the Secretary of the Treasury may prescribe" and "shall be made only to the person or persons on behalf of whom the award or appraisal is made," and the "decisions of the Secretary of the Treasury in making such payments shall be final and conclusive and shall not be subject to review by any other officer of the Government."

One hundred thirty-eight individuals and estates, referred to by the commission as the "Arguello heirs and assignees (Rancho Tijuana)," filed claims. Appellant filed a claim on behalf of the estate of Jose Francisco Arguello and on behalf of the heirs of his estate for the townsite of Tijuana. In her claim she stated: "No claim is made herein on behalf of the estate of the deceased Jose Francisco Arguello for lots B and K, outside of the limits of the Town of Tiajuana, . . . for the reason that it is believed that under the decision of the Supreme Court of Mexico . . . it will be possible for the administratrix of the estate of said deceased to take possession of said property." Respondent filed a claim on behalf of the estate of Pilar Arguello de Luckhardt, including claim for Lots B and K. On April 4, 1947, the commission made its award to various named claimants, including the sum of $21,646 to "The heirs of Jose Francisco Arguello as their interests may appear." The authority of the commission terminated on April 5, 1947.

The decision of the commission in part states that "A number of statements of claims have been filed. These have been amended and revised, and upon the whole the record is very unsatisfactory. . . . Additional evidence has been filed at various times and this Commission has received evidence as late as possible in an endeavor to determine accurately the ownership of the property of the various interests involved. This has not been completely successful." The decision says: "The Commission is unable to determine from the record with certainty the ownership of some of the property. No complete record of conveyances has been furnished. Instead, an index of conveyances has been submitted." The commission continued "Because of the uncertainty as to ownership, this Commission specifically disallows all claims herein except such portions

hereinafter specifically found to be subjects of award. This Commission makes no finding that any claimants are not the owners of the property alleged but merely that their owner-ship has not been established to its satisfaction and the dis-allowance of such items of claim is without prejudice.''

With respect to Lots B and K,—outside of the townsite (the award in controversy was for Lots B and K),—the commis-sion found that the value of Lot B in 1929 was $11,042 and that the loss of use of Lot K was $8,204. No award was made for the townsite. Appellant's claim was only for loss of lands in the townsite. The commission concluded: ''Upon the basis of the entire record the Commission concludes that the claim-ants to whom awards are made herein have shown that they or their respective predecessors in interest were, on November 7, 1929, the rightful owners of various portions and parcels of Tijuana Ranch, outside of the townsite, or of undivided interests therein.'' The parties to whom awards were made are listed with the amount each is entitled to receive, including $21,646 ''without any deductions being made for assignment'' to ''The heirs of Jose Francisco Arguello as their interests may appear.'' The total for the loss of Lot B and the loss of use of Lot K is $19,246, not $21,646. Respondent explains this discrepancy as an error in addition made in the rush of the commission to file its decision before its powers expired.

The complaint in the present action alleged the ownership in Pilar Arguello de Luckhardt of the interest of Jose Fran-cisco Arguello in Rancho Tijuana, the expropriation of the land, the creation of the commission, the filing of a claim by respondent, the decision and award, that respondent is the owner of the award, and that appellant claims some interest therein. The answer denied that respondent is the owner of the award. It alleged that Pilar Arguello de Luckhardt was a party to the partition agreements and that she and her heirs and successors, including respondent, at all times there-after have held themselves out to be the sole owners of the lands assigned to them by those agreements. It admitted that the award ''to the heirs of Jose Francisco Arguello as their interests may appear'' was for Lots B and K. It alleged that the award was to appellant and that she claimed ''the whole thereof.'' Four affirmative defenses were pleaded: 1. failure to state a cause of action; 2. want of jurisdiction; 3. estoppel to deny the validity of the agreements of 1889 and 1890, and that by the agreements of 1889 plaintiff's decedent received title to lands described therein and defendant's decedent and

his heirs received title to other lands; 4. that the award of the commission was to defendant, that it granted the claim of defendant's predecessor to the extent of the loss of the value of the use of Lots B and K, that Lots B and K were distributed to defendant's deceased by the agreement of 1889, that plaintiff has no interest in Lots B and K or in the award, that the decision of the commission is a final judgment and plaintiff is bound thereby and estopped to attack or change it. Appellant filed a cross-complaint in which she alleged that she was the owner of the award, praying that her title thereto be quieted. At the trial appellant filed an amendment to her answer, reading as follows: ''Said defendant as administratrix as aforesaid, and the estate of Jose Francisco Arguello, deceased, claim no right, title or interest in or to said award of the American Mexican Claims Commission, and that said award is vested in the heirs of Jose Francisco Arguello as their interests may appear and is not made to the estate of Jose Francisco Arguello or to this defendant as administratrix thereof.''

The court found the facts as alleged in the complaint; that respondent is the owner of and should be paid the award; that it is not vested in the heirs of Jose Francisco Arguello, or any of them, other than the estate of Pilar Arguello de Luckhardt; and that appellant has no interest in the award. Judgment followed accordingly.

Appellant's major contention is that the decision and award of the commission was res judicata; that ownership of the award was conclusively settled by that decision; and that, therefore, the court was without jurisdiction. She also claims that the complaint does not state facts sufficient to constitute a cause of action for the reason that it does not allege facts showing the existence of an actual or justiciable controversy between the parties. She claims further that certain essential findings are not supported by any evidence and are contrary to the evidence.

■ Claims of citizens of the United States against foreign governments usually are determined by international law, not by municipal law. Unless so provided by Congress the courts of this country, federal and state, have no jurisdiction thereover. (Butler, Treaty Making Power of the United States, vol. 2, p. 298, § 444.) Claims of citizens against foreign governments have ordinarily been submitted to commissioners or some tribunal of arbitration to determine their validity and

amount. (*Ibid.*, p. 304.) Where a commission has been appointed to determine the amount and validity of claims pursuant to or as a result of a treaty, its decision is final and conclusive upon all matters within its jurisdiction and the scope of its authority whether of law or fact. (*Butler* v. *Goreley*, 146 U.S. 303 [13 S.Ct. 84, 36 L.Ed. 981, 984]; *Comegys* v. *Vasse*, 26 U.S. (1 Pet.) 193 [7 L.Ed. 108, 116].) ■ Ordinarily, the authority of the commission is limited to determining the amount and validity of claims as against the other government, and its decision is not conclusive as to the rights of different claimants among themselves. The ordinary judicial tribunals have jurisdiction of the adjustment of conflicting rights of different claimants after the amount and validity of the claim has been established by some other tribunal. (*Comegys* v. *Vasse*, 26 U.S. (1 Pet.) 193 [7 L.Ed. 108, 116]; *Frevall* v. *Bache*, 39 U.S. (14 Pet.) 95 [10 L.Ed. 369, 370]; *Meade* v. *United States*, 76 U.S. (9 Wall.) 691 [19 L.Ed. 687, 690]; *Williams* v. *Heard*, 140 U.S. 529 [11 S.Ct. 885, 35 L.Ed. 550, 554]; *Butler* v. *Goreley*, 146 U.S. 303 [13 S.Ct. 84, 36 L.Ed. 981]; *Dutilh* v. *Coursault*, 8 F.Cas. No. 4206 [5 Cranch C.C. 349]; *Ridgway* v. *Hays*, 20 F.Cas. No. 11817 [5 Cranch C.C. 23]; *Delafield* v. *Colden*, 1 Paige (N.Y.) 139, 142; *New York Insurance Co.* v. *Roulet*, 24 Wend. (N.Y.) 505, 509; *Radcliff* v. *Coster*, 1 Hoff.Ch. (N.Y.) 98; *Lee* v. *Thorndike*, 43 Mass. (3 Metc.) 313.)

The Supreme Court of the United States has settled these questions in cases arising under a number of treaties and legislation pursuant thereto. On February 22, 1819, the United States concluded a treaty with Spain (Florida treaty) which provided for the appointment of commissioners to "receive, examine, *and decide* upon the amount and validity of," all claims described. (8 Stats. 252.) (Italics added.) By Act of March 3, 1821, the Congress provided for carrying the treaty into execution and for the appointment of three commissioners to carry out its stipulations. (3 Stats. 637.) The commissioners made an award to Comegys and Pettit. Vasse sued them claiming ownership of the award. Comegys and Pettit, who claimed as assignees of Vasse, contended that the decision awarding the fund to them was conclusive in their favor and against Vasse. In *Comegys* v. *Vasse*, 26 U.S. (1 Pet.) 193 [7 L.Ed. 108, 116], Mr. Justice Story stated that one of the questions before the court was: "Whether the award of the commissioners, under the treaty with Spain, directing the money to be paid to the defendants, as assignees

of Vasse (which is assumed to be the true state of the fact), is conclusive, upon the rights of Vasse; so as to prevent his recovery in the present action,'' and wrote: ''It has been justly remarked, in the opinion of the learned judge who decided this cause in the Circuit Court, that it does not appear from the statement of facts, who were the persons who presented or litigated the claim before the board of commissioners; nor whether Vasse himself was before the board; nor who were the parties to whom, or for whose benefit, the award was made. We do not think that the fact is material, upon the view which we take of the authority and duties of the commissioners. · The object of the treaty was to invest the commissioners with full power and authority to receive, examine, and decide upon the amount and validity of the asserted claims upon Spain, for damages and injuries. Their decision, within the scope of this authority, is conclusive and final. If they pronounce the claim valid or invalid, if they ascertain the amount, their award in the premises is not re-examinable. The parties must abide by it, as the decree of a competent tribunal of exclusive jurisdiction. A rejected claim cannot be brought again under review, in any judicial tribunal; an amount once fixed, is a final ascertainment of the damages or injury. This is the obvious purport · of a language of the treaty. But it does not necessarily or naturally follow that this authority, so delegated, includes the authority to adjust all conflicting rights of different citizens to the fund so awarded. The commissioners are to look to the original claim for damages and injuries against Spain itself, and it is wholly immaterial for this purpose, upon whom it may, in the intermediate time, have devolved; or who was the original legal, as contradistinguished from the equitable owner, provided he was an American citizen. If the claim was to be allowed as against Spain, the present ownership of it, whether in assignees or personal representatives, or bona fide purchasers, was not necessary to be ascertained, in order to exercise their functions in the fullest manner. Nor could they be presumed to possess the means of exercising such a broader jurisdiction, with due justice and effect. They had no authority to compel parties, asserting conflicting interests, to appear and litigate before them, nor to summon witnesses to establish or repel such interests; and under such circumstances, it cannot be presumed that it was the intention of either government, to clothe them with an authority so summary and conclusive, with

means so little adapted to the attainment of the ends of a substantial justice. The validity and amount of the claim being once ascertained by their award, the fund might well be permitted to pass into the hands of any claimant; and his own rights, as well as those of all others, who asserted a title to the fund, be left to the ordinary course of judicial proceedings in the established courts, where redress could be administered according to the nature and extent of the rights or equities of all the parties. We are, therefore, of opinion, that the award of the commissioners, in whatever form made, presents no bar to the action, if the plaintiff is entitled to the money awarded by the commissioners.'' See, to the same effect, *Delafield* v. *Colden,* 1 Paige (N.Y.) 139, under the Florida treaty.

In *Ridgway* v. *Hays,* 20 F.Cas. No. 11817 [5 Cranch C.C. 23], it was held that ''the commissioners [under the French Treaty (8 Stats. 430) and the Act of July 13, 1832 (4 Stats. 574)] had no jurisdiction to decide ultimately between two or more conflicting American claimants,'' the court saying: ''The claims, of which the board had cognizance, were claims against the French government; not against the owners of the property claimed, nor against the property itself. In each case, the great question for them to decide was, whether the property of American citizens had been unlawfully seized, &c., by the French government. So far as it was necessary to decide the national character of the property seized, they [the commissioners] had authority to ascertain the legal owner; but if all the conflicting claimants were citizens of the United States, there was no necessity of their deciding the question of ownership between them. They might select the name of the person who seemed to them to be the legal owner, or they might name all the conflicting claimants, and leave them to litigate their rights in the municipal courts of the country; or they might award in favor of 'the legal owners,' without naming them, as they did in several cases, . . .'' Also, under the act of Congress enacted pursuant to the French treaty: *Dutilh* v. *Coursault,* 8 F.Cas. No. 4206 [5 Cranch C.C. 349]; *Varet* v. *New York Insurance Co.,* 7 Paige (N.Y.) 560; *Lee* v. *Thorndike,* 43 Mass. 313; *New York Insurance Co.* v. *Roulet,* 24 Wend. (N.Y.) 505. To the same effect, *Frevall* v. *Bache,* 39 U.S. (14 Pet.) 95 [10 L.Ed. 369], under the treaty of 1831 with France (8 Stats. 430) and the act of Congress enacted pursuant thereto (4 Stats. 574), which contained this provision: ''That the said commissioner shall

report to the Secretary of State a list of the several awards made by them; a certified copy whereof shall be by him transmitted to the Secretary of Treasury, who shall thereupon distribute, in rateable proportions, among the persons in whose favor the award shall have been made, such monies as may have been received into the Treasury in virtue of this act. . . ." Appellant relies upon similar provisions of the Settlement of Mexican Claims Act of 1942 in support of her contention that the decision of the commission is conclusive as to ownership. On July 4, 1868, a convention was concluded between the United States and Mexico (15 Stats. 679; 17 Stats. 861; 18 Stats. 700; 18 Stats. 833; 19 Stats. 642), for the adjustment of claims of citizens of either country against the other. The act of Congress pursuant thereto (20 Stats. 144) imposed like powers and duties on the Secretary of State. (See *Porter* v. *White,* 127 U.S. 235 [8 S.Ct. 1217, 32 L.Ed. 112].) In *Bayard* v. *United States,* 127 U.S. 246 [8 S.Ct. 1223, 32 L.Ed. 116], it was held that mandamus would not lie to compel the Secretary of State to pay an award so long as litigation was pending as to ownership of the award.

By Act of June 23, 1874, the Congress established the "Court of Commissioners of Alabama Claims" for the adjudication and disposition of monies received by the United States under an award made by the tribunal of arbitration constituted by virtue of the treaty of May 7, 1871, between the United States and Great Britain. (18 Stats. 245.) The members of the Court were denominated judges and required to take an oath of office. The court was "vested with the same powers now possessed by the circuit and district courts of the United States to compel the attendance and testimony of parties, claimants, and witnesses, to preserve order, and to punish for contempt"; to compel the production of material, books and papers, to administer oaths and to take depositions. Section 11 of the act provided: "That it shall be the duty of said court to receive and examine all claims . . . and to decide upon the amount and validity of such claims. . . ." Section 14 provided: "That the said court shall report to the Secretary of State a list of the several judgments and decisions made by it, a certified copy of which shall, upon the conclusion of the business of the said court be by him transmitted to the Secretary of the Treasury, who

shall thereafter . . . pay the said judgments . . . unto the persons respectively, in whose favor the same shall have been made or their respective legal representatives in full satisfaction and discharge of said judgments . . ."

*Williams* v. *Heard,* 140 U.S. 529 [11 S.Ct. 885, 35 L.Ed. 550], was a contest as to an award which the court said "was made by the court of commissioners in December, 1886, that court finding that the assignees of the defendants in error were entitled to such award." It was urged that the finding was final and irrevocable both as to the amount and those entitled to receive that amount. The court held: "We are not impressed with this view. In our opinion it is unsound. The object for which the Court of Commissioners of Alabama Claims was established was to pass upon the claims which were presented to it for adjudication, and determine the amount to be paid by the United States on each claim. Questions respecting the ownership of the respective claims did not concern the court. Its function was performed when it rendered its judgment on the merit of the claims. Its judgments were final upon all parties as respects the validity of the claim, and the amount to be paid in satisfaction of it; but there is nothing in the Acts of Congress relating to this matter, or in the reason of things, to indicate that the judgment of the court, as to who were the owners of the respective claims submitted, should be considered final and irrevocable." To the same effect with respect to awards of the Court of Commissioners of Alabama Claims: *Butler* v. *Goreley,* 146 U.S. 303 [13 S.Ct. 84, 36 L.Ed. 981]; *Leonard* v. *Nye,* 125 Mass. 455.

All that is said in the foregoing cases applies with like force to the powers of the American Mexican Claims Commission. Appellant, in effect, concedes that its powers were so limited when she says: "The powers of the Commission are delineated and limited to the determination of the validity of claims (22 U.S.C.A. 661.) The Commission's decision does no more than that."

 It is manifest from the language of the award itself that the commission did not determine the question of ownership. The award was not made to the heirs of Jose Francisco Arguello, but to "the heirs of Jose Francisco Arguello as their interests may appear." The clause "as their interests may appear" is one of restriction. It postulates whatever interests, if any, the heirs may be able, by proper proof and in the proper manner, to prove they possess. It refers to

such interests in Lots B and K, if any, as it may appear they had at the time of the loss. If an heir then had an interest he is entitled to his proportionate share of the award. If he had no interest he is not entitled to share in the award. (See *Fenton* v. *Cascade Mut. Fire Assn.*, 60 Wash. 389 [111 P. 343, 344]; *Atlas Reduction Co.* v. *New Zealand Ins. Co.*, (8 Cir.) 138 F. 497 [71 C.C.A. 21, 9 L.R.A.N.S. 433]; *Eagle Star & British Dominions* v. *Tadlock*, 22 F.Supp. 545.)

There is another and compelling reason why it may not be held that the decision of the commission is final and conclusive as to ownership of the award. The commission stated that the record as to the Arguello claims was very unsatisfactory, that its endeavor to determine accurately the ownership of the various interests involved had not been completely successful. It said that it was "unable to determine from the record with certainty the ownership of some of the property." Because of the uncertainty as to ownership it made "no finding that any claimants are not the owners of the property alleged but merely that their ownership has not been established to its satisfaction and the disallowance of such items of claim is without prejudice." It seems clear that the commission did not determine the ownership of Lots B and K. Had it done so, there is no reason why it could not have specifically made the award to the estate of Jose Francisco Arguello, the estate of Pilar Arguello de Luckhardt, or to the heirs of Jose Francisco Arguello without the qualifying or restrictive clause. With respect to every other award the commission made on claims of Arguellos it specifically named the person or estate to whom the award was made. It cannot be said, as appellant asserts, that the commission rejected or disallowed respondent's claim. It does not so appear from the decision. The act provided that the commission upon completion of its work transmit to the Secretaries of State and of the Treasury "a list of all claims disallowed." (56 Stats. 1060, 22 U.S.C.A. § 664(e).) There is no evidence that respondent's claim was included in that list.

Appellant argues that the Administrative Procedure Act of 1926 (60 Stats. 237, 5 U.S.C.A. § 1001 et seq.) is applicable to proceedings before the American Mexican Claims Commission, and that it provides the exclusive method of reviewing the decision of the commission. Respondent is not seeking review of the decision. He is asking only a determination of ownership of the award, a question the commission was not authorized to, and did not, decide.

We conclude that the American Mexican Claims Commission did not have jurisdiction or authority to, and did not purport to, determine conflicting rights between American nationals to the fund awarded to "The heirs of Jose Francisco Arguello as their interests may appear"; that the decision and award is not res judicata as to such conflicting rights or as to ownership of the award; and that the court below had jurisdiction to adjudicate the conflicting claims of the parties to the award.

The evidence fully supports the findings of the trial court that "Pilar Arguello de Luckhardt, at the time of her death, was the owner of all of the right, title and interest that Jose Francisco Arguello had or acquired in the Tijuana Ranch, and that plaintiff has been the owner thereof at all times subsequent to her death. . ."; that respondent at the time of expropriation and at the time of the making of the award was the owner of Lots B and K; that respondent is the owner of the entire award; and that neither appellant nor any heir of Jose Francisco Arguello, "other than the Estate of Pilar Arguello de Luckhardt," has any interest in the award; and that it should be paid to respondent as executor. Legally an executor is not the owner of the assets of the estate he is administering. Title is in the legatees and devisees subject to possession by the executor. (11B Cal.Jur. §§ 834, 835, p. 238.) However, the finding that the executor is the owner is clearly one that he holds for the legatees and devisees and a matter of which appellant does not and cannot complain. The deed of March 7, 1870, from Jose Francisco Arguello and Tomasa Lugo, his wife, conveyed to Caesar A. Luckhardt for a valuable consideration all of their "interest, and inheritance whatsoever" in Rancho Tijuana. By deed of July 1, 1870, Caesar A. Luckhardt conveyed to Pilar Arguello de Luckhardt "all his rights or inheritance, ownership, possession or interests in inheritance," in Rancho Tijuana. Pilar Arguello de Luckhardt appeared in the partition proceedings in Baja California, and was awarded the property, including Lots B and K, which her father would have inherited had he not conveyed his rights to Caesar Luckhardt in 1870. She was given, and accepted, possession. Thereafter during her lifetime Pilar claimed lots B and K. Her executor has claimed them since her death in 1900. So far as appears, neither appellant nor any other heir of Jose except Pilar made claim to them until 1946.

■ The complaint states facts sufficient to state a cause of action for declaratory relief. It alleges ownership by Pilar Arguello de Luckhardt at her death, and by respondent since, of all of the interest of Jose Francisco Arguello in Tijuana Rancho and that respondent is the owner of the award; that appellant claims the award; that she has no right therein. These allegations are sufficient. They show an actual controversy relating to rights in respect to property. (Code Civ. Proc., § 1060; *Lord* v. *Garland*, 27 Cal.2d 840, 851-852 [168 P.2d 5]; *Wollenberg* v. *Tonningsen*, 8 Cal.App.2d 722, 726 [48 P.2d 738]; *James* v. *Hall*, 88 Cal.App. 528 [264 P. 516].) The award is property. (*Phelps* v. *McDonald*, 99 U.S. 298 [25 L.Ed. 473]; *Butler* v. *Goreley*, 146 U.S. 303 [13 S.Ct. 84, 36 L.Ed. 981, 985].) The complaint did not seek a declaration of rights in land in Mexico as appellant asserts. The declaration of rights sought was in the award. Neither did the complaint seek to annul, modify, review, or reverse the award as appellant argues. It sought only a declaration of rights in the award as made, a justiciable controversy of which the court had jurisdiction. The court did not abuse its discretion in entertaining the complaint for declaratory relief.

■ There is likewise no merit in the contention that the complaint does not state a cause of action for declaratory relief in that no actual controversy existed because appellant at the beginning of the trial filed an amendment to the answer in which she stated that neither she, as administratrix, nor the estate of Jose, claimed any interest in the award, and that the award was vested in the heirs of Jose as their interests may appear. The answer admitted that appellant, as administratrix, "claims said award and the whole thereof," and denied that respondent is the owner. Appellant filed a cross-complaint praying that all adverse claims to the award be determined and that she be decreed the owner. At the opening of the trial she filed the amendment, dismissed the cross-complaint, objected to the introduction of any evidence, and moved for judgment on the pleadings. The objection was overruled and the motion denied. The following colloquy then took place: "MR. WALLACE: [Attorney for plaintiff] As soon as Mr. Mace has filed that amendment to the answer I suppose I can make just very formal proof. MR. MACE: [Attorney for defendant] No, I am going to try it on the merits. MR. WALLACE: I do not know how you are going to try it on the merits when you have disclaimed. MR.

MACE: You go ahead with your proof.'' In proving her case appellant was called to the stand to prove the heirs of Jose. Respondent objected. Whereupon the attorney for appellant said: ''The award is to the heirs and I am proving who the heirs are, your Honor.'' He then proceeded to and did prove Jose's heirs. The case was tried on its merits. Evidence was introduced by appellant with respect to all issues in an attempt to negative the allegations of the complaint and to prove the affirmative allegations of her answer. All issues made by the complaint and the answer, without the amendment, were found upon. Apparently the parties introduced all evidence available with respect to those issues. At the oral argument in this court appellant's counsel stated that the amendment did not withdraw the affirmative defenses of the answer. Appellant is estopped from asserting here that an actual controversy did not exist between the parties As said in *Wollenberg* v. *Tonningsen,* 8 Cal.App.2d 722, 725 [48 P.2d 738], where it was claimed that the complaint did not state a cause of action for declaratory relief because no real controversy existed: ''The point would have presented a question of debatable interest if the appellant had stood upon his demurrer, but having answered and gone to trial and the evidence having disclosed the manifest equities incorporated in the judgment the question of the sufficiency of the complaint becomes academic.''

We are of the opinion, contrary to appellant's contention, that the judgment binds the heirs of Jose Francisco Arguello. The basis of the claimed right of the heirs to the award is that Jose in his lifetime owned land which had been expropriated. Upon his death, if he owned the land, it passed to his children. It is in evidence that upon Jose's death whatever land he owned in Mexico passed to his children. Everything he owned at death passed by succession if not disposed of by will. He died intestate. Under treaty with Mexico and legislation enacted pursuant thereto, American nationals asserting ownership of land were given the right to make claim for land expropriated. The claim here existed solely because of the contention that title to the land had passed to the heirs of Jose upon his death. Appellant said in her claim: ''The title to the lands thus expropriated are [sic] claimed by the estate of said deceased [Jose Francisco Arguello] . . .'' The claim for the loss by reason of the expropriation of the land was a right attached to the ownership of the property itself. (*Comegys* v. *Vasse,* 26 U.S.

(1 Pet.) 193 [7 L.Ed. 108, 118].) It was personal property (see cases cited *supra*), an asset of the estate. In making the claim the administratrix represented whatever title Jose had in the land at the time of his death. The legal owners of the claim made by appellant were, of course, the heirs, but subject to the possession of the administratrix. The possession of the administratrix is exclusive of the heirs and good as against all the world until distribution. (Prob. Code, § 300; 11B Cal.Jur. § 836, p. 243.) The administratrix and the heirs are in privity. (11B Cal.Jur. § 836, p. 243.) The claim ripened, so appellant asserts, into an award. The award was not a gift or donation. (*Phelps* v. *McDonald*, 99 U.S. 298 [25 L.Ed. 473, 474].) Title to the award, if it is in the heirs, came to them by operation of law, by descent; not by purchase. The partition did not create a new title in the heirs or change the character of the title from one of descent to a title by purchase. (16 Am.Jur. § 73, p. 845; anno., 103 A.L.R. 231.) Property passing by descent vests by succession. (9 Cal.Jur. § 1, p. 447.) Civil Code, section 1000, provides: "Property is acquired by: 1. Occupancy; 2. Accession; 3. Transfer; 4. Will; or 5. Succession." If Jose owned the land at death, neither the land nor the claim nor the award came to the heirs by any manner enumerated except succession. Anything that passes by succession must be administered. (11A Cal.Jur. § 11, p. 58.) The title which the heirs of Jose assert in the award is represented by appellant as administratrix. (11B Cal.Jur. § 835, p. 240.)

A judgment entered in an action in which an administratrix of an estate of a deceased person is a party, is binding not only upon the administratrix but also upon the heirs of the deceased person, even though the heirs have not been made parties to the action. The rule in this state is that the judgment concludes not only the adverse party but also all those claiming under the title he represents. (*Estate of Clark*, 190 Cal. 354, 359 [212 P. 622]; *Walker* v. *Hansen*, 218 Cal. 619 [24 P.2d 764]; *Dickey* v. *Gibson*, 121 Cal. 276, 278 [53 P. 704]; *Finger* v. *McCaughey*, 119 Cal. 59 [51 P. 13]; *McLeran* v. *Benton*, 73 Cal. 329, 342 [14 P. 879, 2 Am. St.Rep. 814]; *Fredericks* v. *Judah*, 73 Cal. 604, 608 [15 P. 305]; *Bayly* v. *Muehe*, 65 Cal. 345, 348 [3 P. 467, 4 P. 202, 486]; *DeLaOssa* v. *Oxarart*, 58 Cal. 101; *Cunningham* v. *Ashley*, 45 Cal. 485; *Meeks* v. *Olpherts*, 100 U.S. 564 [25 L.Ed. 735, 737]; *Lloyd* v. *Ball*, 77 F. 365, 368; *cf. Cutting* v. *Bryan*,

206 Cal. 254, 258 [274 P. 326] ; *Yearout* v. *American Pipe & Steel Corp.*, 74 Cal.App.2d 139, 143 [168 P.2d 174].)

Any errors in the making of findings without evidentiary support and contrary to the evidence are not of consequence or prejudicial. The criticized findings are not necessary to sustain the judgment. The findings we have previously referred to fully support the judgment. If one or more of the findings, supported by substantial evidence sustains the judgment, as in this case the findings previously referred to do, it is presumed that the trial court predicated its judgment on those findings, and questions relative to other findings are immaterial. (*Mershon Co.* v. *Pachmayr*, 88 Cal.App.2d 901, 904 [199 P.2d 687].)

Judgment affirmed.

Shinn, P. J., and Wood, J., concurred.